### William M. HEFNER

### v.

### James DISTEL, Alias.

### No. 2001–503–Appeal.

Supreme Court of Rhode Island.

Jan. 14, 2003.

Thomas E. Hefner, Greenville, for Plaintiff.

Michael J. Reed, Jr., Bellingham, MA, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case involves an accident at an intersection involving a motorcycle and a car. While attempting to pass other vehicles that were stopped at the intersection, a motorcyclist collided with an automobile attempting to pass through the intersection from a cross street. The defendant, James Distel, alias, who was driving the car, appeals from a Superior Court order granting a new trial—or, in the alternative, an additur—to the plaintiff, motorcyclist William M. Hefner. The defendant contends that the trial justice failed to analyze the evidence properly and erred in granting the plaintiff a new trial. He also maintains that the trial justice should not have awarded the plaintiff an additur after the jury returned a defense verdict and refused to award the plaintiff any damages. A single justice of this Court directed the parties to show cause why the appeal should not be decided summarily. Because neither party has done so, we proceed to decide the appeal at this time.

### Facts and Travel

On April 2, 1997, plaintiff and defendant were involved in an accident when their vehicles collided at the intersection of Benefit and Power Streets in Providence. The plaintiff was driving his motorcycle in the southbound lane of Benefit Street when he came to a stop behind a car near the intersection of Benefit and Power Streets. A cable-television truck had stopped just before the intersection and another car was stopped behind the truck. After waiting for "about 20 seconds," plaintiff decided to pass the two stopped vehicles on the left. The street was narrower than usual as a result of plowed snow that had accumulated on either side of the street. Snow banks at the corners of the intersection of Benefit and Power Streets also obstructed plaintiff's view of traffic on Power Street.

Nevertheless, plaintiff decided to proceed on his motorcycle into the intersection. As he pulled alongside the truck, however, he suddenly realized that the truck driver was waving to defendant and signaling to him that he should proceed with his car through the intersection. Although plaintiff tried to swerve to the left up the Power Street incline to avoid crashing into defendant's car, he was unable to do so and his motorcycle and defendant's car collided. After the accident, plaintiff declined an offer of medical help and was able to drive his motorcycle back to its garage.

According to defendant, before he proceeded through the intersection he looked at the driver of the Cox truck, knowing that he was in control of travel from that side of Benefit Street. After the driver waved him on, defendant testified that he looked to the right and then again to the

left before driving his car through the intersection. The defendant asserted that he was two-thirds of the way through the intersection when he saw plaintiff coming forward on his motorcycle. According to defendant, he applied his brakes and plaintiff hit the left front side of his car. The defendant said that he had been driving slowly because of the steep incline of the Power Street hill.

The driver of the Cox truck testified at a pretrial deposition, and defendant caused his deposition to be read to the jury. In his deposition, the driver said that when he arrived at the intersection of Benefit Street and Power Street he was forced to stop because of the narrow road and the approaching traffic from the opposite side. Because he had "nowhere [sic] to go," he motioned for defendant, who was stopped to his right on Power Street, to proceed through the intersection. He noted that there was not enough room on his left for a car to pass him because of the snow and parked cars. He then watched as plaintiff's motorcycle drove around the left side of his truck, entered the intersection, and hit defendant's car as the two vehicles swerved upward on Power Street. The driver testified that, after the collision, plaintiff made it clear that he did not need medical assistance.

The jury returned a verdict in favor of defendant. Thereafter, plaintiff filed a motion for a new trial or, in the alternative, an additur. The trial justice granted this motion, concluding that defendant was not totally without fault. Although he did not explicitly review the evidence at trial or evaluate the credibility of the witnesses, he appeared to be persuaded that defendant bore at least some of the blame for causing the accident because he proceeded into the intersection from a street corner with a stop sign and he did not anticipate possible traffic passing the cable-television truck on the left. In any event, the trial justice found defendant to be 30 percent negligent and entered an order granting the new trial or, in the alternative, an additur of $950 for plaintiff.

## Analysis

In passing on a motion for a new trial, the trial justice acts:

"as a 'super juror' or a 'thirteenth juror' in that he [or she] makes an independent appraisal of the evidence in the light of his [or her] charge to the jury. He [or she] can weigh the evidence and assess the witnesses' credibility. He [or she] can reject some evidence and draw inferences which are reasonable in view of the testimony and evidence in the record. After he [or she] finishes his [or her] sifting of the evidence, * * * * [i]f he [or she] determines that the evidence presented an 'evenly balanced-reasonable minds could differ' situation, he [or she] denies the motion. On the other hand, if he [or she] is of the opinion that the verdict is not a proper response to the evidence, he [or she] grants the motion." *Kurczy v. St. Joseph Veterans Association, Inc.,* 713 A.2d 766, 770 (R.I. 1998) (quoting *Ruggieri v. Big G Supermarkets, Inc.,* 114 R.I. 211, 215–16, 330 A.2d 810, 812 (1975)).

If a trial justice properly reviews the evidence—commenting on its weight and on the credibility of the witnesses—and uses independent judgment in doing so, his or her decision will not be overturned unless he or she overlooked or misconceived material evidence or was clearly wrong. *Kurczy,* 713 A.2d at 770 (citing *Izen v. Winoker,* 589 A.2d 824, 828–29 (R.I.1991)); see also *Woodstock v. Sherman,* 796 A.2d 450, 451 (R.I.2002) (per curiam). If the evidence does not strongly preponderate against the jury verdict and "the evidence is sharply conflicting and is such that reasonable minds could reach different conclu-

sions," the trial justice should not overturn the verdict. *Rustigian v. Molloy*, 95 R.I. 330, 335, 186 A.2d 724, 727 (1963).

 Here, the trial justice did not analyze the evidence or pass upon the credibility of the witnesses. In fact, his questions to counsel are the primary source for inferring the basis of his decision to grant a new trial or, in the alternative, an additur. Even though a trial justice may reapportion liability in granting an additur, *see Michalopoulos v. C & D Restaurant, Inc.*, 764 A.2d 121, 125 (R.I. 2001) (per curiam), he or she must set forth with some specificity the evidence relied upon in granting a new trial or, in the alternative, an additur. *Pearce v. International Display Corp.*, 526 A.2d 501, 504 (R.I.1987). If a trial justice fails to make a specific appraisal of the evidence, then "this [C]ourt will apply the appellate rule, in which case the evidence is examined in the light most favorable to the prevailing party to determine if there is any competent evidence that, if believed, would support the jury's verdict." *Id.* Given the dearth of factual analysis from the trial justice, we apply the appellate rule to the record in this case.

 The defendant testified that he looked both ways before proceeding into the intersection. Although he specifically looked at the driver of the cable truck and received a signal from him to pass through the intersection, the jury reasonably could have inferred from defendant's testimony that he also looked to the left for any oncoming traffic. When approaching an intersection, a motorist has the duty "of observing the traffic and general situation at or in the vicinity of the intersection. He [or she] must look in the careful and efficient manner in which a [person] of ordinary prudence in like circumstances would look in order to ascertain the existing conditions for his guidance." *Dembi-*

*cer v. Pawtucket Cabinet & Builders Finish Co.*, 58 R.I. 451, 456, 193 A. 622, 625 (1937). From all that appears in this record, defendant acted prudently and cautiously in deciding to proceed into the intersection. On the other hand, plaintiff did not act in such a careful manner because he admitted that he did not go forward in a slow, deliberate manner when he saw that his view of Power Street was obstructed by a snow bank. In addition, plaintiff appears to have violated the rules of the road in passing two vehicles on the left within 100 feet of an intersection. *See* G.L.1956 § 31–15–7(a) ("No vehicle shall at any time be driven to the left side of the roadway under the following conditions: * * * (2) When approaching within one hundred feet (100') of or traversing any intersection * * *.").

In *Rustigian*, 95 R.I. at 335, 186 A.2d at 727, we reversed a trial justice's grant of a new trial in an automobile-accident case. We concluded that the jury in that case had a reasonable basis for finding that defendant was not negligent when photographic evidence of the cars involved indicated that they may have arrived at an intersection at the same time and defendant's vehicle was on the right, allowing the jury to infer that defendant had the right of way pursuant to G.L.1956 § 31–17–1(b). *Rustigian*, 95 R.I. at 334, 186 A.2d at 726 (quoting § 31–17–1(b), which requires drivers entering an intersection at approximately the same time to "yield the right-of-way to the vehicle on the right"). We also decided there that the jury had competent evidence on this basis from which to find that defendant was entirely free from negligence. *Id.*

Similarly, in this case, we conclude that the jury possessed sufficient evidence to decide that the defendant did not operate his car in a negligent manner. The trial justice, we hold, misconceived the evidence

in granting a new trial because the jury could conclude, as the defendant testified, that he took reasonable precautions before entering the intersection while the plaintiff failed to do so.

### Conclusion

Therefore, we sustain the defendant's appeal, vacate the order granting the new trial, or in the alternative, an additur, and remand this case for entry of a final judgment in favor of the defendant.

Justice LEDERBERG participated in all proceedings but deceased prior to the filing of this opinion.