Nicola TARZIA

v.

**STATE of Rhode Island et al.**

**No. 2010–15–Appeal.**

Supreme Court of Rhode Island.

June 12, 2012.

Robert J. Caron, Esq., for Plaintiff.

Michael W. Field, Esq., for Defendant, Newport District Court Clerk's Office and Department of Attorney General.

Kathleen M. Daniels, Esq., Providence, for Defendant, City of Newport, Police Chief McKenna, and Lt. William Fitzgerald.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

**OPINION**

Justice INDEGLIA, for the Court.

This case obliges this Court to examine what remedies may be available to an individual who is aggrieved because of the publication of his past criminal activity after the records of the individual's crime have been ordered sealed and destroyed. The plaintiff, Nicola Tarzia (Tarzia or plaintiff), appeals from judgments in favor of the State of Rhode Island, the Department of Attorney General, Attorney General Patrick Lynch, the Chief Clerk of the Rhode Island District Court, the Clerk for the Second Division District Court, the City of Newport, and Chief Charles Golden and Lieutenant William Fitzgerald of the Newport Police Department. For the reasons set forth in this opinion, we affirm the judgments of the Superior Court.

**I**

**Facts and Travel**

In August 2002, Tarzia, a resident of Stamford, Connecticut, and an elected member of the Stamford Board of Education, was visiting friends in Newport, Rhode Island, when he was arrested and charged with possession of cocaine in violation of G.L.1956 § 21–28–4.01(c)(1). In an effort to resolve this criminal charge, the Attorney General accepted Tarzia into the Adult Diversion Program.[1] After successfully completing the diversion program in August 2003, the state dismissed the charge under Rule 48(a) of the Superior Court Rules of Criminal Procedure.[2]

1. The Adult Diversion Program is an alternative to criminal prosecution that is available to certain first-time nonviolent felony offenders. Depending on the individual and the charge, the program offers the opportunity for the offender to earn a dismissal of his or her criminal charge by participating in drug treatment and mental health programs, performing community service, and paying restitution to victims.

2. Rule 48(a) of the Superior Court Rules of Criminal Procedure reads:

In September 2003, Tarzia began a romantic relationship with Christine Mello (Ms. Mello), which lasted approximately four months. Sometime in fall 2003,[3] Ms. Mello began to repeatedly ask Tarzia if he had ever been arrested.[4] Initially, Tarzia consistently told her "no." Sometime later, however, Ms. Mello confronted Tarzia and indicated that she was aware of his August 2002 arrest. Tarzia consequently acknowledged to her that he had indeed been arrested. Sometime after this admission, Ms. Mello recounted to Tarzia the specific details surrounding his arrest, of which she apparently was already aware.[5] According to Tarzia, Ms. Mello also informed him that she knew all about the arrest from the time of her first inquiry.

On October 17, 2003, Tarzia's then-attorney filed a "Motion to Expunge" in regard to the August 2002 charge using a pre-printed form made available by the Rhode Island District Court clerk's office. On October 28, 2003, the District Court heard and granted Tarzia's motion. At the bottom of the pre-printed form were two empty boxes made available for the District Court judge to mark as a way to effectuate his or her order. The first box, which was "checked" by the judge, was associated with the following language:

> "That the court records of the above matter are ordered sealed pursuant to R.I.G.L. § 12–1–12.1 and the police records of the above matter are ordered destroyed pursuant to § 12–1–12."

The language associated with the second box, which was not "checked," read:

> "That all records of the above matter are ordered expunged pursuant to R.I.G.L. § 12–1.3–3(C)."

The attorney who filed the "Motion to Expunge" on Tarzia's behalf testified at trial that, after the District Court judge "checked" and signed the order, the attorney had certified copies of the order mailed to the Bureau of Criminal Identification of the Department of Attorney General, the Newport Police Department, and to Tarzia's Connecticut attorney.[6]

According to Tarzia, around Christmastime 2003, he ended his relationship with Ms. Mello. Soon thereafter, Ms. Mello began threatening that she was going to expose his arrest to the media.[7]

On the evening of February 8, 2004, Tarzia participated in a school board meeting. At the conclusion of the meeting, a

---

"The attorney for the State may file a dismissal of an indictment, information, or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant."

3. At trial, Tarzia testified that Ms. Mello began asking him about his arrest at the end of September or early October, as well as in November of that year.

4. Tarzia testified that he believed Ms. Mello's father was a retired Massachusetts police officer, who, after performing a background check on Tarzia, informed his daughter of Tarzia's August 2002 arrest. Tarzia testified that he did not know the precise timing of when Ms. Mello's father performed this background check.

5. At trial, Tarzia testified that Ms. Mello already "had all the details" pertaining to his arrest.

6. Although trial testimony brought into question whether the Newport Police Department ever received its copy of the order, the record is silent about whether the Department of Attorney General ever received its respective copy of the order.

7. According to Tarzia, in late February 2004, Ms. Mello obtained a "false" restraining order in Massachusetts against him. After successfully "vacat[ing] the restraining order," Tarzia filed suit against her for, among other allegations, defamation and invasion of privacy. According to Tarzia, that lawsuit resulted in a settlement in his favor.

reporter from a local newspaper, *The Advocate*, approached Tarzia and questioned him about his prior arrest in Newport. Although it is unclear whether Tarzia actually confirmed his arrest to the reporter, the record is clear that he responded to the reporter's question by stating at a minimum that "it was a bogus charge."

On March 6, 2004, *The Advocate* published a front-page article entitled "School board member is in web of legal issues" (the article). The article, admitted at trial as a full exhibit, included many details about Tarzia's arrest for cocaine possession in Newport in August 2002. The article noted that the day before publication, Tarzia himself "acknowledged he was arrested on a drug charge in August 2002 in Newport, R.I., but declined to discuss the case in detail." The article also quoted Sergeant William Fitzgerald[8] (Sgt. Fitzgerald) of the Newport Police Department describing the circumstances of Tarzia's arrest. The article also referred to "[c]ourt records [that] indicate[d] the case was referred to a diversion program." *The Advocate* subsequently published additional newspaper articles that pertained to Tarzia's arrest and his eventual resignation from the school board.

On March 2, 2006, Tarzia commenced this fifteen-count civil action in the Superior Court for Newport County, alleging unlawful dissemination of expunged records in violation of G.L.1956 § 12–1.3–4(d) by Sgt. Fitzgerald (count 1); negligence on Sgt. Fitzgerald's part (count 2); failure of the Attorney General's Office to notify law enforcement agencies, including the Newport Police Department, of the expungement order in violation of § 12–1.3–3(c)

(count 3); supervisory liability on the part of former Attorney General Patrick Lynch for failing to properly train and supervise his subordinates in regard to the release of expunged records (count 4); unlawful dissemination of expunged records in violation of § 12–1.3–4(d) by Susan Calderone (Ms. Calderone), Clerk of the Second Division District Court (count 5); failure of Ms. Calderone to seal plaintiff's records in violation of G.L.1956 § 12–1–12.1(d) (count 6); supervisory liability on the part of Jerome Smith, Chief Clerk of the District Court, for failing to properly train and supervise his subordinates in regard to the sealing of records (count 7); supervisory liability on the part of Chief Charles Golden of the Newport Police Department for failing to properly train and supervise officers on procedures for responding to inquiries of arrest records (count 8); failure of the City of Newport to properly hire, train, and supervise officers "in the law of Rhode Island's Expungement statutes" (count 9); negligence by Sgt. Fitzgerald for releasing information without properly checking the file beforehand (count 10); negligence by Ms. Calderone for not sealing plaintiff's record (count 11); invasion of privacy by Sgt. Fitzgerald for releasing information ordered destroyed (count 12); invasion of privacy by Sgt. Fitzgerald by providing false and erroneous information to a reporter (count 13);[9] and unlawful dissemination of expunged records in violation of § 12–1.3–4(d) by John Doe and Jane Doe, working as clerks for the District Court (counts 14 and 15).[10]

Prior to trial on April 3, 2006, the Department of Attorney General and former

---

**8.** The record indicates that Sgt. Fitzgerald has since been promoted to the rank of lieutenant.

**9.** Tarzia voluntarily dismissed this count prior to trial.

**10.** Melvin Enright (Chief District Court Clerk), Donna Avella (Clerk of the Second Division District Court), and Chief McKenna (Newport Police Chief) were later substituted as parties pursuant to Rule 25(d)(1) of the Superior Court Rules of Civil Procedure.

Attorney General Patrick Lynch moved to dismiss counts 3 and 4 pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure. After hearing arguments on the motion, a Superior Court justice dismissed both counts in a written order dated June 8, 2006. In granting the motion, the hearing justice found that § 12–1.3–3(c) did not place an affirmative duty on the Attorney General to distribute copies of the expungement order to respective law enforcement agencies.

Thereafter, over the course of six days in early February 2009, a jury trial transpired with a different justice presiding. At the close of Tarzia's presentation of evidence, both the state and city moved separately for judgments as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure.[11] These motions were granted as to all remaining counts. Tarzia's appeal to this Court followed.

Additional facts that are pertinent to the issues on appeal will be supplied in the following discussion.

## II

### Issues on Appeal

Tarzia advances numerous issues on appeal. First, he argues that the hearing justice erred in granting the state's Rule 12(b)(6) motion to dismiss based upon his ruling that the Attorney General did not have an affirmative duty to notify all relevant law enforcement agencies after a record has been formally expunged. Second, he maintains that the trial justice erred by not "harmonizing" §§ 12–1–12 and 12–1.3–4 in such a way as to allow him to invoke a remedy of civil liability in his case. Third, he contends that, in addition to the $100 fine explicitly available for violations of

§ 12–1–12, he is entitled to other causes of action based in common law. Fourth, he argues that the information Sgt. Fitzgerald allegedly provided to a reporter amounted to a violation of Rhode Island's right to privacy statute. Lastly, Tarzia contends that the trial justice erred when he determined that Ms. Calderone was sued in her official capacity only.

## III

### Standards of Review

The solitary purpose of a Rule 12(b)(6) "motion to dismiss is to test the sufficiency of the complaint." *Narragansett Electric Co. v. Minardi*, 21 A.3d 274, 277 (R.I.2011) (quoting *Laurence v. Sollitto*, 788 A.2d 455, 456 (R.I.2002)). When reviewing the grant of a Rule 12(b)(6) motion, "this Court applies the same standards as the trial justice" by assuming that the allegations contained in the complaint are true and examining the facts in the light most favorable to the plaintiff. *Minardi*, 21 A.3d at 278 (citing *Barrette v. Yakavonis*, 966 A.2d 1231, 1233 (R.I.2009)). "The grant of a Rule 12(b)(6) motion to dismiss is appropriate 'when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiffs claim.'" *Palazzo v. Alves*, 944 A.2d 144, 149–50 (R.I.2008) (quoting *Ellis v. Rhode Island Public Transit Authority*, 586 A.2d 1055, 1057 (R.I.1991)).

Likewise, "[o]ur review of a trial justice's decision on a motion for judgment as a matter of law is *de novo*." *Gianquitti v. Atwood Medical Associates, Ltd.*, 973 A.2d 580, 589 (R.I.2009) (citing *Franco v. Latina*, 916 A.2d 1251, 1258 (R.I.2007)).

11. The state moved on behalf of Mr. Enright, Ms. Avella, and John and Jane Doe. The city moved on its own behalf as well as on behalf of Sgt. Fitzgerald and Chief McKenna.

Therefore, this Court "review[s] the entry of judgment as a matter of law by applying the same standard as the trial justice, 'consider[ing] the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw[ing] from the record all reasonable inferences that support the position of the nonmoving party.'" *Id.* at 590 (quoting *Calise v. Curtin,* 900 A.2d 1164, 1167–68 (R.I.2006)). Thus, "[t]he trial justice may grant a [motion for judgment as a matter of law] if 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue * * *.'" *Black v. Vaiciulis,* 934 A.2d 216, 219 (R.I. 2007) (quoting Rule 50(a)(1) of the Superior Court Rules of Civil Procedure). "However, the trial justice must deny the motion if there are factual issues on which reasonable people may draw different conclusions." *Id.* (citing *Tedesco v. Connors,* 871 A.2d 920, 927 (R.I.2005)).

 Additionally, this Court reviews "questions of statutory construction *de novo." Kingston Hill Academy v. Chariho Regional School District* 21 A.3d 264, 271 (R.I.2011) (quoting *Downey v. Carcieri,* 996 A.2d 1144, 1149 (R.I.2010)). "[O]ur ultimate goal" in interpreting a statute is "to give effect to the General Assembly's intent[,]" which is best "found in the plain language used in the statute." *Id.* (quoting *Steinhof v. Murphy,* 991 A.2d 1028, 1036 (R.I.2010)). Only if the statute is ambiguous do we "apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature." *Id.* (quoting *In re Tetreault,* 11 A.3d 635, 639 (R.I.2011)).

# IV

## Discussion

### A

### Motion to Dismiss

#### (Counts 3 & 4)

 We will first address Tarzia's appeal about what he asserts is the Attorney General's affirmative duty to notify all relevant law enforcement agencies after a record has been expunged. The statute that Tarzia contends places this duty on the Attorney General is § 12–1.3–3(c), which, at the time pertinent to this appeal,[12] read as follows:

"(c) If the court grants the [expungement] motion, it shall order all records and records of conviction relating to the conviction expunged and all index and other references to it deleted. A copy of the order of the court shall be sent to any law enforcement agency and other agency known by either the petitioner, the department of the attorney general, or the court to have possession of the records. Compliance with the order shall be according to the terms specified by the court."

In the written order dated June 8, 2006, granting the state's motion to dismiss, the hearing justice properly noted that "any liability [for the state] hinges upon the existence of a duty to notify the Newport Police Department of the expunged records." Thereafter, the hearing justice found that "[t]he plain language of [§ 12–1.3–3(c)] does not indicate who is responsible for sending a copy of the expungement order to the respective law enforcement agencies." The hearing justice then con-

---

**12.** General Laws 1956 § 12–1.3–3(c) has since been amended by P.L.2009, ch. 68, art. 11, § 1.

cluded that "[p]ut simply, there is no affirmative duty * * * that requires the Attorney General to distribute the copies of the [expungement] order to the respective agencies."

On appeal, Tarzia, without further clarification, argues that whether the state had knowledge of the Newport Police Department's possession of Tarzia's arrest records was "a question of fact that should have gone to the jury." Tarzia claims that, simply because the statute appears to dictate concurrent duties among himself, the Attorney General, and the courts, it does not relieve the Attorney General of its independent duty to notify the Newport Police Department.

To begin, we note that the first question to resolve is whether § 12–1.3–3(c) is even applicable to Tarzia's case. As discussed in further detail *infra*, chapter 1.3 of title 12, titled "Expungement of Criminal Records," pertains to a different subject matter than chapter 1 of title 12, titled "Identification and Apprehension of Criminals." Although the pre-printed form Tarzia filed on October 17, 2003 was entitled "Motion to Expunge," the box that was "checked" to effectuate the resultant order explicitly referred only to chapter 1 of title 12, and not § 12–1.3–3(c). Therefore, the action that was actually ordered by the District Court was the sealing and destruction of Tarzia's arrest records under §§ 12–1–12 and 12–1–12.1 and not the expungement of a conviction pursuant to § 12–1.3–3(c). Indeed, there was no conviction to expunge because Tarzia's charges were dismissed.[13] Thus, § 12–1.3–3(c) did not come into play in this case because the action ordered by the District Court did not in any way involve the actual expungement of a record of conviction. Because we agree that § 12–1.3–3(c) does not apply to the case at bar, we affirm the trial court's dismissal of counts 3 and 4.

■ Assuming *arguendo* that § 12–1.3–3(c) did apply to Tarzia's case, we re-emphasize that "[i]t is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *State v. Santos*, 870 A.2d 1029, 1032 (R.I.2005) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I.1996)). It is clear to this Court that § 12–1.3–3(c) does not place upon the Attorney General the obligation to send a copy of the expungement order to the applicable law enforcement agencies. Notably, the Attorney General is specified in the statute only as to *how* certain law enforcement agencies are determined for notification of the expungement order, and not as to *who* is to send the expungement order.

The statutory language in question provides that "[a] copy of the order of the court shall be sent to any law enforcement agency and other agency *known by either* the petitioner, the department of the attorney general, or the court to have possession of the records." Section 12–1.3–3(c) (emphasis added). Tarzia's proposed interpretation of the statute requires complete disregard of the term "known." To the contrary, this Court must give effect to each and every word used in the statute. *See State v. Clark*, 974 A.2d 558, 571 (R.I. 2009) (citing *State v. Bryant*, 670 A.2d 776,

---

**13.** General Laws 1956 § 12–1–12(a) explicitly governs the destruction or sealing of records "after there has been an acquittal, dismissal, no true bill, no information, or the person has been otherwise exonerated from the offense with which he or she is charged * * *." To the contrary, § 12–1.3–3(c) pertains to the expungement of "all records * * * relating to the conviction expunged." Section 12–1–12.1 administers the filing of motions for sealing records of persons acquitted or otherwise exonerated.

779 (R.I.1996)). Therefore, this Court holds that, even if § 12–1.3–3(c) did apply to the case now before this Court, the clear and unambiguous statutory language does not impose an affirmative duty upon the Attorney General to distribute expungement orders, and thus the Attorney General cannot be held liable for failing to do so.

## B

### Motions for Judgment as a Matter of Law

#### 1

### Civil Liability Pursuant to § 12–1.3–4

#### (Counts 1, 5, 14, & 15)

██ We now address the issue of whether the remedy of civil liability found in § 12–1.3–4 applies to Tarzia's case. After reviewing the facts and applicable statutes, we hold that it does not.

The following statutory pronouncements are pertinent to our review. Section 12–1–12, which governs the destruction or sealing of records of people who have been acquitted or otherwise exonerated, reads in relevant part as follows:

"(a) Any fingerprint, photograph, physical measurements, or other record of identification, heretofore or hereafter taken by or under the direction of the attorney general, the superintendent of state police, the member or members of the police department of any city or town or any other officer authorized by this chapter to take them, of a person under arrest, prior to the final conviction of the person for the offense then charged, shall be destroyed by all offices or departments having the custody or possession within sixty (60) days after

there has been an acquittal, dismissal, no true bill, no information, or the person has been otherwise exonerated from the offense with which he or she is charged, and the clerk of court where the exoneration has taken place shall * * * place under seal all records of the person in the case, including all records of the division of criminal identification * * *; provided, that the person shall not have been previously convicted of any felony offense. Any person who shall violate any provision of this section shall be fined not exceeding one hundred dollars ($100)."[14]

Section 12–1.3–4, which addresses the wrongful disclosure of previously expunged records, states, in pertinent part, as follows:

"(a) Any person having his or her record expunged shall be released from all penalties and disabilities resulting from the crime of which he or she had been convicted * * *.

" * * *

"(c) Whenever the records of any conviction and/or probation of an individual for the commission of a crime have been expunged under the provisions of this chapter, any custodian of the records of conviction relating to that crime shall not disclose the existence of the records upon inquiry from any source * * *.

"(d) * * * Any agency and/or person who willfully refuses to carry out the expungement of the records of conviction pursuant to § 12–1.3–2, or this section or willfully releases or willfully allows access to records of conviction, knowing them to have been expunged, shall be civilly liable."[15]

---

**14.** For the sake of clarity, we shall hereinafter refer to this provision as the "sealing statute."

**15.** For the benefit of the reader and to distinguish this statute from the sealing statute previously mentioned, we shall hereinafter refer

In his appeal, Tarzia acknowledges that the sealing statute and the expungement statute each contain distinct and dissimilar remedies. Indeed, the sealing statute explicitly provides for a monetary fine not exceeding $100 to be imposed on any person who violates any provision of that section. Section 12-1-12(a). To the contrary, the expungement statute provides that any person "who willfully refuses" to expunge records or "willfully allows access" to previously expunged records, knowing them to be expunged, "shall be civilly liable." Section 12-1.3-4(d). Despite this marked difference, however, Tarzia maintains that because both statutes "deal with the same subject matter," and because both statutes "fall under the rubric of the term 'expungement[,]'" the trial court should have harmonized the two chapters in such a way as to allow for the civil liability remedy found in the expungement statute to attach to a custodian of records who violates the sealing statute. In support thereof, Tarzia contends that it is absurd to imagine that the Legislature intended to provide a civil remedy to people who have been found guilty of crimes which are later expunged, but not provide the same civil remedy to people who have been charged with a crime, but who later have been exonerated.

In further support of his argument, Tarzia relies on *Billington v. Fairmount Foundry,* 724 A.2d 1012, 1013–14 (R.I. 1999), in which we stated that "[i]n construing the provisions of statutes that relate to the same or to similar subject matter, the court should attempt to harmonize each statute with the other so as to be consistent with their general objective scope." (quoting *Kaya v. Partington,* 681 A.2d 256, 261 (R.I.1996)). In that case, this Court was called upon to interpret a

section of the workers' compensation statute that, if read literally, provided a surviving spouse with an annual cost of living increase, but was silent about whether a similar cost-of-living increase was provided to dependent children when no surviving spouse existed.[16] *Id.* at 1013. Noting the "humanitarian goals" of the Workers' Compensation Act, *id.* at 1014, and giving the statute "what appear[ed] to be the meaning that is most consistent with its policy or obvious purposes[,]" this Court held that the statute did, in fact, provide for an annual cost-of-living increase for dependent children. *Id.* (quoting *Kirby v. Planning Board of Review of Middletown,* 634 A.2d 285, 290 (R.I.1993)).

The *Billington* case is distinguishable from the instant matter. In *Billington,* 724 A.2d at 1013, the two statutory provisions at issue were both subsections within the same section of G.L. 1956 chapter 33 of title 28. Here, however, the sealing statute and the expungement statute are not only found in separate sections, but in fact are located in different chapters of title 12. Because the sealing and expungement statutes are located in completely separate chapters that have distinct purposes, we are therefore unable to look to an overall guiding policy common to both statutory provisions, as we did in *Billington,* 724 A.2d at 1013–14.

 Furthermore, although this Court "follow[s] the rule of construction that provides that provisions 'relating to the same or similar subject matter should be construed such that they will harmonize with each other and be consistent with their general objective scope[,]'" *McKenna v. Williams,* 874 A.2d 217, 243 (R.I.2005) (quoting *Blanchette v. Stone,* 591 A.2d 785, 786 (R.I.1991)), a necessary precondition to

---

to it as the "expungement statute," because this statute explicitly pertains to past convictions that have been formally expunged.

16. *See* G.L.1956 § 28–33–12.

such construction is that the statutory provisions clearly relate to the same subject matter. We are unwilling to stretch our rules of construction in a search for a common legislative policy that is not readily apparent between the two provisions. In the case at hand, it is clear that the sealing statute and the expungement statute concern different subject matter and dissimilar temporal applications. As briefly discussed *supra*, the sealing statute applies specifically to the destruction or sealing of court and police records after "an acquittal, dismissal, no true bill, no information," or other exoneration. Section 12–1–12(a). On the other hand, the expungement statute applies to records relating to "any conviction and/or probation of an individual for the commission of a crime * * *." Section 12–1.3–4(c). It is clear from the language of the expungement statute that its available remedies apply only to people who have been convicted of a crime. Although Tarzia was arrested and charged for possession of cocaine, he was never convicted of the crime—thus, the expungement statute does not apply.

Additionally, the time frames involved with both statutes differ. Under the expungement statute, a person seeking to expunge any record of a prior conviction is required to wait a certain amount of time before filing a motion to expunge. *See* § 12–1.3–2. In particular, a person convicted of a misdemeanor can only file "after five (5) years from the date of the completion of his or her sentence[,]" and a person convicted of a felony must wait ten years. *Id.* If a person is exonerated, however, the sealing statute requires no minimum waiting period before the sealing and destruction of police or court records.[17] *See* § 12–1–12; *see also* § 12–1–12.1. Here, Tarzia was arrested in August 2002, and he filed his "Motion to Expunge" in October 2003—a time period that would be insufficient to invoke the application of the expungement statute, if it applied. Thus, Tarzia is unable to avail himself of the remedy under that statute.

Moreover, we find it noteworthy that, although Tarzia petitions this Court to read into the sealing statute the same civil liability remedy afforded under the expungement statute, he does not address the heightened standard of liability articulated in the expungement statute. The sealing statute specifically imposes a fine upon "[a]ny person who shall violate any provision of this section * * *." Section 12–1–12(a). In contrast, however, the expungement statute requires willfulness and knowledge before its remedy of civil liability attaches. *See* § 12–1.3–4(d) ("Any agency and/or person who *willfully* refuses to carry out the expungement of the records of conviction * * * or *willfully* releases or *willfully* allows access to records of conviction, *knowing* them to have been expunged, shall be civilly liable." (emphases added)). The issue of willfulness is left untouched by Tarzia in his appeal.

■ At this point, we reiterate that, "when the language of a statute is clear and unambiguous, [this Court] must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *In re Tetreault*, 11 A.3d at 639 (quoting *State v. LaRoche*, 925 A.2d 885, 887 (R.I.2007)). Having discerned no ambiguity in these statutes, it is our opinion that we are not obliged to embark on a search for legislative intent. "Where there

---

17. We note that the Legislature has imposed a waiting period of three years from the date of filing before a person charged with a crime of domestic violence may have his or her "records associated with the charge * * * expunged, sealed or otherwise destroyed." Section 12–1–12(c).

is no ambiguity, we are not privileged to legislate, by inclusion, words[, or remedies,] which are not found in the statute." *Wayne Distributing Co. v. Rhode Island Commission for Human Rights*, 673 A.2d 457, 460 (R.I.1996). For these reasons, we hold that the expungement statute and its remedy of civil liability do not apply in this case. We therefore affirm the trial court's judgment on counts 1, 5, 14, and 15.

### 2

### Availability of Additional Causes of Action Under Chapter 1 of Title 12

### (Counts 2, 7, 8, 9, 10 & 11)

On appeal, Tarzia also contends that this Court should recognize other causes of action based in common law for alleged violations of the sealing statute. Tarzia argues that although the only remedy explicitly included in the sealing statute is a monetary fine, there exist other causes of action available to him.[18] In fact, Tarzia asserts that the $100 fine in the sealing statute bolsters his argument in this regard by imposing a duty on custodians of police and court records.

This argument draws our attention to the well-established rule of statutory construction that when, as here, "a statute operates in * * * derogation of the common law, we are charged with a strict interpretation of the General Assembly's language." *Sindelar v. Leguia*, 750 A.2d 967, 970 (R.I.2000) (citing *Kelly v. Marcantonio*, 678 A.2d 873, 876 (R.I.1996)). Here, Tarzia conceded in the Superior Court, as he must, that at common law, there is no right to the sealing of court

records or the destruction of police records, and thus the sealing statute operates in derogation of the common law. The plain language of the sealing statute indicates that the only redress for a violation of that statute is a fine not exceeding $100. Indeed, nothing in the statutory language remotely suggests that a further remedy applies. The fact that the Legislature specifically limited the remedy for the violation of the statute to a monetary fine demonstrates "that the [L]egislature provided precisely the redress it considered appropriate[,]" and therefore we decline to expand that remedy. *Sterling Suffolk Racecourse Limited Partnership v. Burrillville Racing Association, Inc.*, 989 F.2d 1266, 1270 (1st Cir.1993).

We note that, in support of his argument to expand the remedies allowed under the sealing statute, Tarzia relies on this Court's holding in *Stebbins v. Wells*, 818 A.2d 711, 717 (R.I.2003) (*Stebbins II*),[19] in which we held that a monetary fine instituted by a statute did not preclude further causes of action sounding in negligence. In *Stebbins II*, this Court, in interpreting the Real Estate Sales Disclosure Act (the act), initially reaffirmed that "the function of prescribing remedies for [statutory] rights is a legislative responsibility [and] not a judicial task." *Id.* at 716 (quoting *Cummings v. Shorey*, 761 A.2d 680, 685 (R.I.2000)). However, after reaffirming this general rule, this Court concluded that the act did not preclude an aggrieved buyer's separate causes of action against a real estate agent, despite the act containing a statutory penalty of $100. *Id.* In so doing, this Court held that the act imposed a duty on real estate agents to disclose to a potential buyer of real estate any materi-

---

18. Specifically, Tarzia claims numerous causes of action based on negligence, failure to properly train and supervise, and supervisory liability.

19. This Court had previously issued an opinion in the *Stebbins* case. *See Stebbins v. Wells*, 766 A.2d 369 (R.I.2001) (*Stebbins I*).

al defect in the property that the agent has knowledge of and that could affect the buyer's decision, and that a breach of this duty may be the basis for a negligence claim. *Id.* at 718–19.

The *Stebbins II* case is distinguishable from this case because the act in *Stebbins II*, 818 A.2d at 718, codified an existing exception to the common law principle of *caveat emptor.* Specifically, the statute codified the principle that, in real estate transactions, "passive concealment by the seller" may be grounds for a cause of action. *Id.* (quoting *Stebbins v. Wells*, 766 A.2d 369, 373 (R.I.2001) (*Stebbins I* )). Indeed, in *Stebbins II* we recognized that this exception extends to an agent to disclose any known defects to a potential buyer of real estate "in situations where [the agent] has special knowledge not apparent to the buyer and is aware that the buyer is acting under a misapprehension as to facts which would be important to the buyer and would probably affect [his or her] decision." *Id.* (quoting *Stebbins I*, 766 A.2d at 373). Hence, the act did not create a right unrecognized at common law, but rather codified an exception under the common law.

 In contrast, the sealing statute in the case at bar is purely a statutory right that has no basis in common law. "When a statute 'does not plainly provide for a private cause of action [for damages], such a right cannot be inferred.' " *Stebbins II*, 818 A.2d at 716 (quoting *Bandoni v. State*, 715 A.2d 580, 584 (R.I.1998)). Upon application of a strict interpretation of the sealing statute, this Court is constrained to conclude that a violation of this non-common-law statutory right cannot yield Tarzia a cause of action based in common-law negligence. *See Bandoni*, 715 A.2d at 582, 584 (refusing to recognize a negligence claim against the state and local municipal-

ity for the violation of a statutory right created in derogation of common law).

In conclusion, we hold that there is simply no reason to promulgate by judicial fiat additional causes of action based upon the sealing statute, and we affirm the trial court's decision on counts 2, 7, 8, 9, 10, and 11, accordingly.

### 3

### Claim of Invasion of Privacy

#### (Count 12)

 In his complaint, Tarzia contends that the information allegedly provided to a reporter from *The Advocate* by Sgt. Fitzgerald amounted to a violation of Rhode Island's right-to-privacy statute. General Laws 1956 § 9–1–28.1, concerning the right to privacy, reads in pertinent part:

"(a) Right to privacy created. It is the policy of this state that every person in this state shall have a right to privacy which shall be defined to include any of the following rights individually:

" * * *

"(3) The right to be secure from unreasonable publicity given to one's private life;

"(i) In order to recover for violation of this right, it must be established that:

"(A) There has been some publication of a private fact;

"(B) The fact which has been made public must be one which would be offensive or objectionable to a reasonable man of ordinary sensibilities;

"(ii) The fact which has been disclosed need not be of any benefit to the discloser of the fact."

In granting the city's Rule 50 motion pertaining to Tarzia's allegation of invasion of privacy, the trial justice determined that Tarzia failed to present adequate evidence that a private fact had been unlawfully

published. Our review of the record leads us to likewise conclude that the evidence produced at trial provides no legally sufficient evidentiary basis to prove that Sgt. Fitzgerald invaded Tarzia's rights by publicizing a private fact.

The records associated with Tarzia's arrest for cocaine possession were public in nature from August 2002 until October 2003. The evidence most damaging to Tarzia's allegation is his own trial testimony concerning his own actions and statements. This testimony indicated that, even before the newspaper article was published, he disclosed to Ms. Mello, in response to her repeated inquiries, that he had, in fact, been arrested. Moreover, after the school board meeting of February 8, 2004, Tarzia was questioned by a reporter about his arrest. Tarzia's testimony at trial confirmed the fact that, although he could not recall whether he used the word "arrest" in his response to the reporter, he did state to the reporter that "it was a bogus charge." [20] Finally the record indicates that, during the summer of 2003, rumors were circulating in the Stamford political arena, alleging that Tarzia had a drug problem. Taking the totality of this evidence into consideration, we conclude that Tarzia has failed to provide a "legally sufficient evidentiary basis for a reasonable jury" to determine that the publication of his arrest was the publication of a private fact. *Black*, 934 A.2d at 219 (quoting *Mills v. State Sales, Inc.*, 824 A.2d 461, 472 (R.I.2003)). In other words, the proverbial cat had already been let out of the bag before Sgt. Fitzgerald disclosed any details

of Tarzia's arrest.[21] Accordingly, as it pertains to Tarzia's allegation of invasion of privacy, we affirm the trial justice in granting Sgt. Fitzgerald's Rule 50 motion. Because we hold that Tarzia has not established that a private fact was unlawfully published, it is unnecessary for this Court to discuss the second prong of the right-to-privacy statute—whether the information released would be objectionable to a reasonable person.

### 4

### Failure to Seal Records

### (Count 6)

■ The issue of whether Ms. Calderone was sued in her personal or her official capacity is determinative of Tarzia's appeal as it relates to count 6. The singular remedy included in the sealing statute provides that *"[a]ny person* who shall violate any provision of this section shall be fined not exceeding one hundred dollars ($100)." Section 12–1–12(a) (emphasis added). By comparison, the remedy in the expungement statute provides that *"[a]ny agency and/or person* who * * * willfully allows access to records of conviction * * * shall be civilly liable." Section 12–1.3–4(d) (emphasis added). The plain language of § 12–1.3–4(d) expressly indicates that a willful release of expunged records of conviction in violation of the expungement statute may make an agency itself liable, whereas the language of § 12–1–12(a) limits the levying of a fine for a violation of the sealing statute to an individual in a personal capacity. Accordingly, for count

---

**20.** Tarzia was confronted during cross-examination with his earlier deposition testimony, in which he testified that he responded to the reporter by saying "it was a bogus arrest and the charges were dismissed."

**21.** In his appeal, Tarzia also argues that the trial justice erred in finding that none of the

information Sgt. Fitzgerald provided to the reporter was information that was required to be sealed under § 12–1–12. In view of the above-mentioned conclusions, it is unnecessary for us to consider and decide the merits of this issue.

6 to remain a viable cause of action, Tarzia's claim must be set forth against Ms. Calderone in her personal capacity.

 In his decision concerning the defendants' Rule 50 motions, the trial justice found that "all of the named [defendants] were sued in their official capacity." On appeal, Tarzia argues with little explanation that the trial justice erred in his determination. It appears from Tarzia's complaint that he may have initially filed suit against Ms. Calderone in her personal capacity, alleging that she failed to seal his court file in violation of the sealing statute. Nevertheless, even if that was his intention, the record reveals that during the outset of the trial, Tarzia, without objection, consented to the substitution of Ms. Calderone with her successor, Donna Avella (Ms. Avella), pursuant to Rule 25(d)(1) of the Superior Court Rules of Civil Procedure.[22] Thus, because the sealing statute's remedy is limited to violations by an individual in his or her personal capacity, count 6 of Tarzia's complaint must fail as a matter of law. Even assuming that Tarzia filed suit against Ms. Calderone in her personal capacity, because he failed to object to or contest her substitution with Ms. Avella, who was clearly substituted in her official capacity, he waived his right to challenge that decision on appeal.[23]

## V

### Conclusion

For the reasons stated in this opinion, we affirm the judgments of the Superior Court. The record shall be remanded to the Superior Court.

---

22. The record reflects that Ms. Calderone had passed away prior to the start of trial. Rule 25(d)(1) of the Superior Court Rules of Civil Procedure states that "[w]hen a public officer is a party to an action in an official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the public officer's successor is automatically substituted as a party."

23. As this Court has stated many times, the "raise-or-waive" rule precludes our consideration of an issue that has not been raised and articulated at trial. *Gordon v. State*, 18 A.3d 467, 474 (R.I.2011).