**Supreme Court**

No. 2013-247-Appeal.
(PB 10-5615)
No. 2013-248-Appeal.
(PC 10-5672)
No. 2013-249-Appeal.
(PB 10-7394)

Allan M. Shine et al.                    :

                     v.                   :

Charles Moreau et al.                    :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2013-247-Appeal.
(PB 10-5615)
No. 2013-248-Appeal.
(PC 10-5672)
No. 2013-249-Appeal.
(PB 10-7394)

Concurring and dissenting
Opinion begin on Page 29

Allan M. Shine et al.      :

v.          :

Charles Moreau et al.     :

Present:  Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  These consolidated cases come before this Court on appeal from a decision of the Providence County Superior Court, which contained three distinct holdings. First, the Superior Court granted the Central Falls Receiver's[1] motion for partial

---

[1]    There were several individuals who served as Receiver for the City of Central Falls during the period of time preceding the filing of these cases and during the pendency of the cases.  We shall simply make a generic reference to "the Receiver."  On November 14, 2013, by order of this Court, Allan M. Shine, Esq. (the Trustee) was substituted as Appellee in the place of the Receiver in all three of the cases consolidated in the present action.

According to the "Memorandum in Support of Assented to Motion to Change Name of Appellee," on August 1, 2011, the Receiver for Central Falls filed for bankruptcy.  The United States Bankruptcy Court confirmed a "Fourth Amended Plan for the Adjustment of Debts of the City of Central Falls, Rhode Island" (the Plan).  The Plan became effective on October 22, 2012. Pursuant to the terms of Article IV, Section S of the Plan, all claims against elected officials of the City of Central Falls were transferred into a trust, and Mr. Shine was appointed as Trustee, thus beginning his involvement in these cases.  Mr. Shine, in his official capacity, is the only Appellee in the Supreme Court cases numbered 2013-247 and 2013-249.  However, the Appellees in Supreme Court case number 2013-248 are Mr. Shine, in his official capacity; Rosemary Booth Gallogly, in her capacity as Director of the Department of Revenue; James

summary judgment, holding that the Receiver, who was appointed to Central Falls pursuant to the terms of G.L. 1956 chapter 9 of title 45 (the Financial Stability Act or the Act), was entitled to reimbursement for his attorneys' fees; the Superior Court determined that such reimbursement was to be provided by the Central Falls Mayor Charles Moreau (the Mayor),[2] in his individual capacity, and the members of the City Council for the City of Central Falls (the City Council) (collectively the Appellants),[3] in their individual capacities. The Superior Court, consequently, denied the counter-motion for summary judgment filed by the Appellants on the same issue. The Superior Court's second holding was to determine that the Mayor was not entitled to indemnification from the Receiver for "all losses, costs, expenses, and damages—including

Diossa, in his capacity as a member of the City Council for the City of Central Falls; and Richard Licht, in his capacity as Director of the Department of Administration.

[2]     We note that Mr. Moreau was recently released from federal prison after serving a sentence for accepting a bribe in an unrelated matter. See W. Zachary Malinowski, Judge frees corrupt ex-Central Falls Mayor Moreau after year in jail, The Providence Journal, http://www.providencejournal.com/article/20140228/News/302289892 (last visited June 17, 2015). However, this fact has no bearing on our legal analysis.

[3]     In Supreme Court case number 2013-248, the Appellants are Mayor Charles Moreau, in his official capacity as Mayor of the City of Central Falls and individually; the City Council for the City of Central Falls; William Benson, Jr., in his capacity as a member of the City Council for the City of Central Falls; Richard Aubin, Jr., in his capacity as a member of the City Council for the City of Central Falls; Eunice DeLaHoz, in her capacity as a member of the City Council for the City of Central Falls; and Patrick J. Szlastha, in his capacity as a member of the City Council for the City of Central Falls.
     In Supreme Court case number 2013-247, the Appellants are Mayor Moreau, in his official capacity and in his individual capacity; William Benson, Jr., in his official capacity as President of the City Council for the City of Central Falls and in his individual capacity; Richard Aubin, Jr., in his official capacity as a member of the City Council for the City of Central Falls and in his individual capacity; Eunice DeLaHoz, in her official capacity as a member of the City Council for the City of Central Falls and in her individual capacity; Patrick J. Szlastha, in his official capacity as a member of the City Council for the City of Central Falls and in his official capacity; and James Diossa, in his official capacity as a member of the City Council for the City of Central Falls and in his individual capacity.
     In Supreme Court case number 2013-249, the only Appellant is Mayor Moreau in his official as well as his individual capacity.
     We shall refer to all of the above individuals collectively as the Appellants.

attorney's fees and court costs—arising out of" the instant cases, thus denying the Mayor's motion for partial summary judgment and granting the counter-motion for summary judgment filed by the Receiver on that issue. Lastly, the Superior Court denied a "Motion for Advance Attorney's Fees" filed by Attorney Lawrence L. Goldberg.

On appeal, Appellants contend that the hearing justice's decision was in error for the following reasons: (1) in granting the Receiver's motion for partial summary judgment with respect to reimbursement of the Receiver's attorneys' fees, the hearing justice misapplied the statute at issue, § 45-9-11, and failed to recognize that Appellants were immune under the Anti-SLAPP Act, as codified in G.L. 1956 chapter 33 of title 9, and the "Noerr-Pennington doctrine;"[4] (2) in denying Appellants' partial motion for summary judgment seeking indemnification for the Mayor, the hearing justice erred in concluding that the Mayor was not acting in his official capacity and was, therefore, not entitled to indemnification for his legal costs under G.L. 1956 § 45-15-16 and, as currently codified, Central Falls Code of Ordinances, Chap. 2, Art. III, Div. 3, § 2-108 (the City Ordinance); and (3) in denying Attorney Goldberg's motion for advance of attorneys' fees, the hearing justice erred because Attorney Goldberg was properly retained by the City Council to represent it in the suit regarding the constitutionality of the Financial Stability Act and, thus, was entitled to remuneration.

For the reasons set forth in this opinion, we reverse the Superior Court's judgment in all respects.

---

[4] The "Noerr-Pennington doctrine" has been defined as "[t]he principle that the First Amendment shields from liability * * * companies that join together to lobby the government." Black's Law Dictionary 1209 (10th ed. 2014). The doctrine is derived from the following cases: Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961); United Mine Workers of America v. Pennington, 381 U.S. 657 (1965). Black's Law Dictionary at 1209; see also Cove Road Development v. Western Cranston Industrial Park Associates, 674 A.2d 1234, 1237-39 (R.I. 1996) (discussing the Noerr-Pennington doctrine in detail).

# I

## Facts and Travel

The passing of the Financial Stability Act and the appointment of a Receiver for Central Falls has garnered much coverage in the press and much attention from the Rhode Island courts.[5] In fact, this Court has already had occasion to rule on the constitutionality of the Financial Stability Act, holding that the Act is constitutional. See Moreau v. Flanders, 15 A.3d 565 (R.I. 2011). The issues now before us deal with claims that remained in the consolidated cases after we passed on the Act's constitutionality. Due to the fact that the details of this case have been extensively set forth both in our previous decision and in a previous decision of the Superior Court, we shall limit ourselves to simply relating the specific facts pertinent to the issues now before us. We refer the interested reader to those other opinions for a more detailed recitation of the facts. See Moreau, 15 A.3d at 570-73; Pfeiffer v. Moreau, Nos. PB 10-5615, PB 10-5672, 2010 WL 4156173 (R.I. Super. Oct. 18, 2010).[6]

## A

## Background

On July 16, 2010, Mark A. Pfeiffer, a retired Superior Court Justice, was appointed as the first Receiver for the City of Central Falls pursuant to the terms of the Financial Stability Act in

---

[5]      See, e.g., Moreau v. Flanders, 15 A.3d 565 (R.I. 2011); Flanders v. Moreau, Nos. PB 10-5615, PB 10-5672, PB 10-7394, slip op. (R.I. Super. July 22, 2011); Pfeiffer v. Moreau, Nos. PB 10-5615, PB 10-5672, 2010 WL 4156173 (R.I. Super. Oct. 18, 2010); see also Abby Goodnough, One More Job Lost in the Recession: The Mayor's, The New York Times, http://www.nytimes.com /2011/02/22/us/22mayor.html?_r=0 (last visited June 17, 2015); John Hill, Receiver acts swiftly to take control of Central Falls, demoting mayor first, http://www.ricouncil94.org/Portals/0/Uploads/Documents/Public/Receiver%20acts%20swiftly%20to%20take%20control%20of%20Central%20Falls.pdf (last visited June 17, 2015).

[6]      See also Katherine Newby Kishfy, Preserving Local Autonomy in the Face of Municipal Financial Crisis: Reconciling Rhode Island's Response to the Central Falls Financial Crisis with the State's Home Rule Tradition, 16 Roger Williams U. L. Rev. 348, 348-52 (Spring 2011).

order to begin grappling with the woeful financial state of Central Falls. Moreau, 15 A.3d at 569. The Receiver proceeded, quite properly, to invoke the Financial Stability Act so as to assume the function and duties of the Mayor. Id. at 572. Subsequently, the City Council passed a resolution authorizing the hiring of an attorney to provide the City Council with advice and guidance. Id. The next day the Receiver rescinded that resolution. Id. The City Council then passed a resolution which authorized the engagement of legal counsel to file a court action challenging the constitutionality of portions of the Financial Stability Act. Id. The Receiver also rescinded that resolution and sent the City Council a letter which stated that, with respect to the issue of the constitutionality of the Financial Stability Act, the City Council was ordered to serve only in an advisory capacity. Id. Then, on September 23, 2010, the Receiver filed a verified complaint in the Superior Court for Providence County seeking declaratory and injunctive relief against the Mayor and the City Council. Id. at 573. The Mayor and the City Council reacted by filing, on September 27, 2010, their own cause of action in Superior Court. Id. The cases were consolidated in the Superior Court, and it is in those consolidated cases that this Court ultimately opined that the Financial Stability Act was constitutional. Id.

After we handed down our ruling on the Act's constitutionality, there remained several claims yet to be adjudicated. It is the Superior Court's rulings as to those claims which are before this Court in the present appeal. See Flanders v. Moreau, Nos. PB 10-5615, PB 10-5672, PB 10-7394, slip op. (R.I. Super. July 22, 2011). As we have indicated, the pertinent remaining claims include a claim by the Receiver for reimbursement of his attorneys' fees pursuant to § 45-9-11 and a claim by the Appellants seeking indemnification for the Mayor's "losses, costs, expenses, and damages—including attorney's fees and court costs" pursuant to § 45-15-16 and

- 5 -

the City Ordinance. Additionally, there remains the issue of Attorney Goldberg's attorneys' fees.

**B**

**Motions Before the Superior Court**

The Superior Court, in the case at bar, was presented with the following filings: (1) the Receiver's motion for summary judgment seeking reimbursement of his attorneys' fees and the Appellants' objection thereto as well as their counter-motion for summary judgment; (2) the motion for summary judgment filed by the Mayor seeking indemnification and the Receiver's counter-motion for summary judgment with respect to that same claim; and (3) a "Motion for Advance Attorney's Fees" for Attorney Goldberg and the Receiver's objection to that motion. We shall discuss the Superior Court's decision on each motion in turn.

**C**

**The Superior Court Decision**

**1. Reimbursement of the Receiver**

The hearing justice ruled that, in his estimation, "it [was] abundantly clear that the Receiver has satisfied the elements of his § 45-9-11 claims against Mayor Moreau and the City Council."[7] Focusing on the criteria contained in the just-cited statute, he found that the Mayor and the City Council had "caused" the Receiver to be required to expend unappropriated funds in

---

[7]    General Laws 1956 § 45-9-11(a) provides in pertinent part as follows:

> "No official of a city * * * that is subject to the jurisdiction of a * * * receiver * * * shall knowingly expend, or cause to be expended, in any fiscal year any sum in excess of that official's departmental or other governmental unit's appropriation duly made in accordance with the law, nor commit the city * * * nor cause it to be committed, to any obligation for the future payment of money in excess of that appropriation, with the exception of court judgments."

- 6 -

order to engage outside counsel and pursue his Superior Court action for declaratory and injunctive relief; the hearing justice determined that, as a result, the Appellants were personally liable for the expended funds. He stated: "Mayor Moreau and the City Council have failed to proffer any evidence to contradict the fact that no appropriations were made in the fiscal year 2010-2011 budget for the retention of outside legal counsel by any of the Receiver, Mayor Moreau, and the City Council." The hearing justice also referenced "numerous letters" from the Receiver to the Mayor and the City Council to put them on notice as to the lack of appropriations for the retention of outside counsel. The hearing justice concluded that portion of his analysis with a finding that "Mayor Moreau and the City Council's retention of counsel and pursuit of the instant litigation—despite the Receiver's admonitions—were intentional and in derogation of the Receiver's superior and superseding authority."

Turning next to address the Appellants' invocation of the Anti-SLAPP statute and the "Noerr-Pennington doctrine" as constituting a "shield from liability," the hearing justice found that the Anti-SLAPP statute and the "Noerr-Pennington doctrine" were not applicable to the instant cases.[8] He went on to state that "both Mayor Moreau and the City Council were free to engage counsel or challenge the [Financial Stability Act's] constitutionality in their individual capacities and at their own expense." The hearing justice then concluded his discussion with the following additional words: "Despite numerous admonitions from the Receiver, Mayor Moreau and the City Council proceeded in derogation of [the Receiver's] authority and caused the City to

---

[8]     Rhode Island's Anti-SLAPP statute, as codified in G.L. 1956 chapter 33 of title 9, was "intended to emulate the federal Noerr-Pennington doctrine * * * by providing conditional immunity to any person exercising his or her right of petition or free speech under the United States or Rhode Island Constitution concerning matters of public concern." Global Waste Recycling, Inc. v. Mallette, 762 A.2d 1208, 1210, 1211 (R.I. 2000).

incur expenses not previously appropriated. As a result, having chosen not to proceed in their individual capacities, the parties must now face the music and pay the price."

### 2. Indemnification of the Mayor

The hearing justice began his consideration of the issue of the Mayor's asserted entitlement to indemnification by noting that § 45-15-16 authorizes cities to pass ordinances concerning indemnification of public officials for legal fees and further noting that Central Falls had passed such an ordinance—viz., the previously referenced City Ordinance. Under the City Ordinance, in order to be entitled to indemnification, the public official is required to have been acting "within the scope of his official duties or employment" or "from the performance * * * of his public duties" when he or she incurs the attorneys' fees and costs. It was the judgment of the hearing justice that, when the Mayor engaged counsel and proceeded with the litigation, he was "acting beyond the narrow scope of his official or public duties" because the appointment of the Receiver had reduced the Mayor to merely an advisory capacity. The hearing justice stated that, for that reason, the Mayor was not entitled to indemnification under the City Ordinance.

The hearing justice also pointed out that, even if the Mayor were entitled to indemnification, such entitlement would not be absolute in view of the hearing justice's understanding that the Mayor's indemnification required the approval of the City Council; he then stated that, since the Receiver had assumed the role of the City Council, he was free to reject the Mayor's request for indemnification.

### 3. Attorneys' Fees for Attorney Goldberg

Attorney Goldberg represented the City Council in these consolidated cases and sought the fees incurred in connection with that representation. The Superior Court denied the motion to advance the fees, observing that Attorney Goldberg could not "point to [any] statutory or

contractual provision as the basis for his claim for legal fees." The hearing justice stated that, in light of this Court's opinion in Moreau v. Flanders, 15 A.3d 565 (R.I. 2011), Attorney Goldberg's representation of the City Council was in contravention of the Financial Stability Act. The hearing justice also pointed out that the Receiver had rescinded the resolution of the City Council hiring Attorney Goldberg; he added that "Attorney Goldberg may now contest the validity of the Receiver's rescission, and may accuse the Receiver of serving as an autocrat, but our Supreme Court has expressly disagreed with that contention" when it upheld the "'broad and sweeping' powers" of the Receiver under the Financial Stability Act. The hearing justice emphasized his ruling by stating that this Court had "proclaimed the law of this land, and Attorney Goldberg and the City Council are bound by it."

The Appellants timely appealed the hearing justice's decision to this Court.

## II

## Analysis[9]

### A

### Standards of Review

#### 1. Summary Judgment

This Court reviews the grant of summary judgment in a de novo manner. DeMarco v. Travelers Insurance Co., 26 A.3d 585, 605 (R.I. 2011); see also Ferris Avenue Realty, LLC v. Huhtamaki, Inc., 110 A.3d 267, 279 (R.I. 2015); Tanner v. Town Council of East Greenwich, 880 A.2d 784, 791 (R.I. 2005). When conducting such a review, "we employ the same rules and

---

[9] In wrestling with the issues that these challenging cases implicate, we have frequently recalled to mind the following memorable sentence from President Abraham Lincoln's Annual Message to Congress of December 1, 1862: "As our case is new, so we must think anew, and act anew." Abraham Lincoln: Great Speeches 78, 97 (Stanley Appelbaum ed., Thrift Editions 1991).

standards that the hearing justice used." Estate of Giuliano v. Giuliano, 949 A.2d 386, 391 (R.I. 2008). As such, we will affirm the grant of summary judgment "[i]f we conclude, after viewing the evidence in the light most favorable to the nonmoving party, that there is no genuine issue of material fact to be decided and that the moving party is entitled to judgment as a matter of law * * *." DeMaio v. Ciccone, 59 A.3d 125, 129 (R.I. 2013) (internal quotation marks omitted); see also Ferris Avenue Realty, LLC, 110 A.3d at 279; Lynch v. Spirit Rent-A-Car, Inc., 965 A.2d 417, 424 (R.I. 2009). We also remain mindful of the principle that "[s]ummary judgment is an extreme remedy that should be applied cautiously." Hill v. National Grid, 11 A.3d 110, 113 (R.I. 2011) (internal quotation marks omitted); see also Plainfield Pike Gas & Convenience, LLC v. 1889 Plainfield Pike Realty Corp., 994 A.2d 54, 57 (R.I. 2010).[10]

### 2. Legal Fees

This Court has stated that "[t]he issue of whether there exists a basis for awarding attorneys' fees generally is legal in nature, and therefore our review of such a ruling is de novo." Blue Cross & Blue Shield of Rhode Island v. Najarian, 911 A.2d 706, 709 (R.I. 2006) (emphasis in original). "Only if it is determined that there is such a basis, then this Court will review a motion justice's actual award of attorneys' fees for an abuse of discretion." Id.

This Court has also "staunch[ly] adhere[d] to the 'American rule' that requires each litigant to pay its own attorney's fees absent statutory authority or contractual liability." Moore v. Ballard, 914 A.2d 487, 489 (R.I. 2007); see also Eleazer v. Ted Reed Thermal, Inc., 576 A.2d 1217, 1221 (R.I. 1990) ("The plaintiff correctly argues that the right to collect attorney's fees did not exist at common law and that, consequently such fees may be taxed only when there is either

---

[10] It is worth noting that the cases presently before us are ones that seem particularly appropriate for resolution on summary judgment given that there is no dispute between the parties as to any material facts.

- 10 -

specific statutory authority or contractual liability.").  We have further stated that that general rule is not without exception, recognizing "this Court's inherent power to fashion an appropriate remedy that would serve the ends of justice * * *."  Moore, 914 A.2d at 489 (internal quotation marks omitted); see Vincent v. Musone, 574 A.2d 1234, 1235 (R.I. 1990); see also Truk Away of Rhode Island, Inc. v. Macera Bros. of Cranston, Inc., 643 A.2d 811, 817 (R.I. 1994).  Nevertheless, we have stated that, when reviewing a statute under which a party seeks attorneys' fees, "this [C]ourt may not imply statutory authority through judicial construction in situations in which the statutes are unequivocal and unambiguous."  Eleazer, 576 A.2d at 1221.

**B**

**Reimbursement of the Receiver**

The Appellants contend that the hearing justice erred when he granted the Receiver's motion for summary judgment, whereby the Receiver sought the reimbursement of the attorneys' fees that he had incurred.  The operative statute under which those attorneys' fees were awarded is § 45-9-11, which provides, in pertinent part, as follows:

> "(a) No official of a city, town, or fire district that is subject to the jurisdiction of a fiscal overseer, budget commission, or receiver, except in the case of an emergency involving the health and safety of the people or the people's property declared by the city or town council or fire district governing body, shall knowingly expend, or cause to be expended, in any fiscal year any sum in excess of that official's departmental or other governmental unit's appropriation duly made in accordance with the law, nor commit the city, town, or fire district, nor cause it to be committed, to any obligation for the future payment of money in excess of that appropriation, with the exception of court judgments.
>
> "(b) An official who intentionally violates this section shall be personally liable to the city, town, or fire district for any amounts expended in excess of an appropriation to the extent that the city, town, or fire district does not recover such amounts from the person or persons to whom such amounts were paid and shall

- 11 -

not be indemnified by the city, town, or fire district for any such amounts." (Emphasis added.)

As we have stated, we typically adhere steadfastly to the American Rule that, in the absence of a statute providing otherwise, each litigant is responsible for the litigant's own legal expenses.[11] Nunes v. Meadowbrook Development Co., Inc., 24 A.3d 539, 542 (R.I. 2011); Kells v. Town of Lincoln, 874 A.2d 204, 216 (R.I. 2005) (Robinson, J., concurring in part and dissenting in part); see also Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247 (1975). The question then becomes: does § 45-9-11 provide a statutory basis pursuant to which the Receiver is entitled to attorneys' fees? It is appropriate to begin our exploration of that question with a brief review of our jurisprudence with respect to statutory analysis generally and with respect to statutes dealing with attorneys' fees more specifically.

Just as we review motions for summary judgment in a de novo manner, so too do we review questions of statutory construction in a de novo manner. Mutual Development Corp. v. Ward Fisher & Co., LLP, 47 A.3d 319, 323 (R.I. 2012); DeMarco, 26 A.3d at 605; Downey v. Carcieri, 996 A.2d 1144, 1149 (R.I. 2010). It is a fundamental principle in our jurisprudence

---

[11]     It is important to note that, as briefly alluded to supra, this Court has acknowledged that it may award attorneys' fees "as an exercise of its inherent power to fashion an appropriate remedy that would serve the ends of justice." Blue Cross & Blue Shield of Rhode Island v. Najarian, 911 A.2d 706, 711 n. 5 (R.I. 2006) (internal quotation marks omitted). With respect to our inherent power to award attorneys' fees, we have stated:

> "This remedy * * * is available only in one of three narrowly defined circumstances: (1) pursuant to the common fund exception that allows a court to award attorney's fees to a party whose litigation efforts directly benefit others * * * ; (2) as a sanction for the willful disobedience of a court order * * * ; or (3) when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. (internal quotation marks omitted).

We are not confronted with any of the just-referenced situations in the instant cases.

that, "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." State v. Diamante, 83 A.3d 546, 548 (R.I. 2014) (internal quotation marks omitted); see also Tanner, 880 A.2d at 796; Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996). In the event that we "find the statute to be unambiguous, we simply apply the plain meaning and our interpretive task is done." Diamante, 83 A.3d at 550. Moreover, we adhere to "the maxim that the plain statutory language is the best indicator of legislative intent." Marques v. Pawtucket Mutual Insurance Co., 915 A.2d 745, 747 (R.I. 2007) (internal quotation marks and brackets omitted). Only when the statute is ambiguous will we "apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature." Diamante, 83 A.3d at 548 (internal quotation marks omitted); see Tarzia v. State, 44 A.3d 1245, 1252 (R.I. 2012); Tanner, 880 A.2d at 796. With respect to statutes providing for an award of attorneys' fees, we have stated that such statutes "are in derogation of the common law" and, consequently, must be strictly construed. Moore, 914 A.2d at 489 n. 3; see also Accent Store Design, Inc., 674 A.2d at 1226 ("[A] statute that establishes rights not recognized by common law is subject to strict construction.").

Section 45-9-11(b) states that an official would be personally liable for any funds "expended in excess of an appropriation." While it is arguable that, by employing a liberal hermeneutical approach, this general statement could be broadly interpreted to include attorneys' fees, the law requires us to construe the statute strictly. See Moore, 914 A.2d at 489 n. 3. Our law is clear that such a general statement, when strictly construed, is not specific enough to allow for the award of attorneys' fees in a situation such as the one with which we are presented.

It has been the consistent holding of this Court that even statutes which go significantly further than § 45-9-11 and actually provide for the award of "costs" should not be interpreted as providing for the award of attorneys' fees. See, e.g., Moore, 914 A.3d at 489; Waldeck v. Piner, 488 A.2d 1218, 1220 (R.I. 1985); Di Iorio v. Cantone, 49 R.I. 452, 454-55, 144 A. 148, 149 (1929). We have also held that, when a rule is silent regarding attorneys' fees, there is "no room for implication by judicial construction" and attorneys' fees are not available under the statute. Eleazer, 576 A.2d at 1221. Thus our precedent indicates that a statute must explicitly include attorneys' fees in order for a court to award attorneys' fees pursuant to that statute. See id.; see also Moore, 914 A.2d at 489; Waldeck, 488 A.2d at 1220; Di Iorio, 49 R.I. at 454-55, 144 A. at 149.

A review of § 45-9-11 makes it abundantly clear that the language thereof does not include the words "attorney's fees;" indeed, it does not even contain the word "costs." The statute is completely silent with respect to attorneys' fees. Accordingly, the required strict construction of the statute leads us to the ineluctable conclusion that it unambiguously fails to provide for the award of attorneys' fees. See Eleazer, 576 A.2d at 1221. We must simply apply the plain meaning of the statute; it is not within our power to read language into a statute which the General Assembly chose not to put there. Diamante, 83 A.3d at 548; see Dodd v. United States, 545 U.S. 353, 359 (2005) (stating that a court is simply "not free to rewrite [a] statute that Congress has enacted"); see also Rivera v. Employees' Retirement System of Rhode Island, 70 A.3d 905, 910 (R.I. 2013) ("[W]e have noted that [w]here there is no ambiguity, we are not privileged to legislate, by inclusion, words which are not found in the statute.") (internal quotation marks omitted). Accordingly, it is our judgment that the hearing justice erred in awarding attorneys' fees pursuant to § 45-9-11.

Our confidence in the conclusion that we have reached is buttressed by the fact that the General Assembly has, on multiple occasions, enacted statutes in which it has explicitly provided for the award of attorneys' fees—statutes that contain wording quite unlike the wording of § 45-9-11. See, e.g., G.L. 1956 § 28-35-17.1(b) ("Upon determination of the responsibility for any delay or continuance, the [C]ourt shall have the authority to assess all direct costs or expenses incurred by any party or by the [C]ourt as a result of the delay or continuance, or an appropriate penalty, including reasonable attorney's fees, upon the responsible employer, employee, insurance carrier, or attorney or other representative.") (emphasis added); G.L. 1956 § 28-9.2-16 ("If either the bargaining agent or the corporate authorities files a petition for writ of certiorari to the [S]upreme [C]ourt of the [S]tate of Rhode Island for a review or modification of a majority decision of the arbitrators * * * the party against whom the decision of the [S]upreme [C]ourt is adverse, if the [S]upreme [C]ourt finds the appeal or petition to be frivolous, shall pay reasonable attorney's fees and costs to the successful party as determined by the [S]upreme [C]ourt * * *.") (emphasis added); G.L. 1956 § 5-37.3-9(d) ("Attorney's fees may be awarded, at the discretion of the [C]ourt, to the successful party in any action under this chapter.") (emphasis added). Accordingly, it is clear that the General Assembly, when it chooses to do so, is fully capable of specifically providing for the award of attorneys' fees. It simply did not do so in the statute at issue.

For all of the foregoing reasons, it is our holding that the hearing justice erred in awarding attorneys' fees to the Receiver pursuant to § 45-9-11. This is so because, in our opinion, the hearing justice focused in error on whether the requirements of § 45-9-11 were met, rather than whether that statute actually provided for the payment of attorneys' fees. Thus, contrary to the conclusion of the hearing justice, summary judgment should be granted in the

Appellants' favor with respect to the issue of whether the Receiver is entitled to reimbursement of his attorneys' fees.[12]

## C

### Indemnity of the Mayor

The Appellants argue that the Mayor is entitled to be indemnified for his attorneys' fees and legal costs pursuant to § 45-15-16 and the City Ordinance.[13]  In response, Mr. Shine argues that the power of the Mayor and the City Council was transferred to the Receiver when he was appointed and the Mayor and the City Council were relegated to a merely advisory capacity.  On that basis, he contends that the Mayor was not authorized to bring suit in his official capacity or to retain counsel, which makes him ineligible for indemnification.[14]

Section 45-15-16, on which the Appellants rely, provides in pertinent part as follows:

> "All * * * city council[s] * * * shall * * * indemnify any and all
> * * * public employees * * * [and] officials * * * from all loss,

---

[12]    The Appellants also contend that they should not be required to reimburse the Receiver in view of the provisions of the Rhode Island Anti-SLAPP statute and the "Noerr-Pennington doctrine."  In light of our holding, we need not reach that argument.  See Grady v. Narragansett Electric Co., 962 A.2d 34, 42 n. 4 (R.I. 2009) (referencing "our usual policy of not opining with respect to issues about which we need not opine").

[13]    We note that the Appellants argue before this Court that both the Mayor and the City Council are entitled to indemnification under G.L. 1956 § 45-15-16 and the City Ordinance.  However, the hearing justice was presented with a motion only with respect to the Mayor; accordingly, it is only the decision on that motion that we may review.  See State v. Garrett, 91 A.3d 793, 804 n. 8 (R.I. 2014) (stating that "due to the fact that * * * an argument was not raised at any point before the trial court, it has not been preserved for appellate review"); see also State v. Figuereo, 31 A.3d 1283, 1290 n. 8 (R.I. 2011).  Any fees that were incurred by the City Council are more properly addressed, as they were below, in the context of Attorney Goldberg's "Motion for Advance Attorney's Fees."  See Part II.D, infra.

[14]    Mr. Shine cites to numerous statutory provisions which lend support to his contention that the Receiver had been granted virtually absolute power over almost the entire governmental function in Central Falls and that other government officials had been reduced to an advisory capacity.  See, e.g., G.L. 1956 §§ 45-9-7; 45-9-12; 45-9-15; 45-9-16; 45-9-6(d)(1); 45-9-6(d)(6).  However, given the fact that there is no dispute between the parties as to the power bestowed upon the Receiver by statute, we need not discuss each individual statutory section.

cost, expense, and damage, including legal fees and court costs, if any, arising out of any * * * action * * * by reason of any intentional tort or by reason of any alleged error or misstatement or action or omission, or neglect or violation of the rights of any person under any federal or state law, including misfeasance, malfeasance, or nonfeasance * * * if the elected or appointed * * * official * * * at the time of the intentional tort or act, omission or neglect, was <u>acting</u> <u>within</u> <u>the</u> <u>scope</u> <u>of</u> <u>his</u> <u>or</u> <u>her</u> <u>official</u> <u>duties</u> <u>or</u> <u>employment</u>. The municipality * * * may decline to indemnify any elected or appointed * * * official * * * for any misstatement, error, act, omission, or neglect if it resulted from willful, wanton, or malicious conduct on the part of the * * * official * * *. The indemnity shall be provided by the city * * * council * * * on a case by case basis or by ordinance of general application. The ordinance or agreement to indemnify shall include, among other things, the provision of legal counsel at the expense of the city or town and/or the reimbursement for attorneys' fees and other expenses incurred in connection with the conduct of the defense, including payment of the judgment." (Emphasis added.)

The City Ordinance § 2-108 largely mirrors § 45-15-16, stating:

"The city <u>shall</u> indemnify any and all public employees [and] officials * * * from all loss, cost, expense and damage, including legal fees and court costs, if any, arising out of any * * * action * * * by reason of any intentional tort or by reason of any alleged error or misstatement or action or omission, or neglect or violation of the rights of any person under any federal or state law, including misfeasance, malfeasance or nonfeasance * * * if such employee [or] official * * * at the time of such intentional tort or act, omission or neglect, was <u>acting</u> <u>within</u> <u>the</u> <u>scope</u> <u>of</u> <u>his</u> <u>official</u> <u>duties</u> <u>or</u> <u>employment</u>." (Emphasis added.)

Additionally, the Central Falls Code of Ordinances § 2-109, provides as follows:

"The city shall decline to indemnify any such employee [or] official * * * for any misstatement, error, act, omission or neglect if the same resulted from willful, wanton or malicious conduct on the part of such employee [or] official * * *. The city council shall decide, on a case-by-case basis, whether indemnification should be allowed or declined."

The task before us is to construe the just-quoted statutory provisions and the provisions of the Ordinance to determine whether the hearing justice erred in granting summary judgment for the Receiver on the issue of indemnification.

As previously stated, when construing statutes, it is the function of this Court to conduct a <u>de novo</u> review to determine whether the statutory language is clear and unambiguous. <u>Downey</u>, 996 A.2d at 1149. And it is a basic principle of our jurisprudence that, "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." <u>Diamante</u>, 83 A.3d at 548 (internal quotation marks omitted). If the Court finds "the statute to be unambiguous, [it] simply appl[ies] the plain meaning and [its] interpretive task is done." <u>Id.</u> at 550.

After construing § 45-15-16 and the City Ordinance, and after considering the unique factual situation presented in these cases, we are of the opinion that the Mayor is entitled to indemnification pursuant to the terms of the statute and the City Ordinance. Both § 45-15-16 and the City Ordinance are absolutely clear. They squarely provide that a city official shall be indemnified for his or her legal costs, including attorneys' fees,[15] if he or she was acting within

---

[15]    Central Falls Code of Ordinances, Chap. 2, Art. III, Div. 3, § 2-110(a) explicitly provides that:

> "The city shall have the duty to provide legal representation through the city solicitor or through outside legal counsel without charge to the persons involved to any city officer or employee indicated in section 2-108, in connection with any claim, suit for damages or other action against such person arising from the performance by said person of his public duties, provided that such person may have his own private counsel to assist in his defense, at the expense of the person so involved."

Thus, although the Central Falls Code of Ordinances does not use the specific words "attorneys' fees," the just-quoted language, in addition to the use of the term "legal costs" in § 2-108, makes it clear that § 2-108 provides for an award of attorneys' fees.

the scope of his or her official duties. We are unable to discern any ambiguity whatsoever in the statute or the City Ordinance; accordingly, we must apply their plain meanings. Diamante, 83 A.3d at 548. The use of the word "shall" makes mandatory the indemnification provided for in the statute and the City Ordinance if the criteria set forth in the statute are met.[16] See 1A Norman J. Singer and J.D. Shambie Singer, Statutes and Statutory Construction § 25:4 at 589 (7th ed. 2009) (stating that, "[u]nless the context otherwise indicates, use of the word 'shall' * * * indicates a mandatory intent"). Thus, any discretion accorded to a city council with respect to deciding whether or not to provide indemnification relates only to making a determination as to whether the requirements of § 45-15-16 and the City Ordinance have been met—i.e., whether the city official in question was acting within the scope of his or her employment. If the answer to that inquiry is yes, then that official is entitled to indemnification. We note that the statute does not contain any language strictly requiring a vote by the City Council, and we disagree with the hearing justice's statement to the contrary; the statute simply requires a determination that the requirements of the statute and the City Ordinance have been met. Therefore, since there is no dispute as to the Mayor's status as a city official, the only question now before the Court is whether the Mayor was "acting within the scope of [his] official duties or employment" when he challenged the constitutionality of the Financial Stability Act in the Superior Court and when he defended himself in the action filed by the Receiver. Sec. 45-15-16.

---

[16] It is vitally important to note that, in 2009, § 45-15-16 was amended. Before that amendment, the statute provided that a city council "may" indemnify officials acting in the scope of their official duties. The 2009 amendment changed the term "may" to "shall." P.L. 2009, ch. 361, § 1. It necessarily follows that the General Assembly thereby made indemnification mandatory, rather than discretionary, if the criteria set forth in the statute are met. See 1A Norman J. Singer and J.D. Shambie Singer, Statutes and Statutory Construction § 25:4 at 589 (7th ed. 2009).

A thorough review of the voluminous record in these cases has led this Court to the conclusion that, taking into account the unique and unprecedented set of circumstances presented here, the Mayor was acting within the scope of his official duties. We have reached that conclusion for a number of reasons. The first, and perhaps the most important, reason is that the Mayor's actions were taken to obtain a definitive ruling as to the constitutionality of an entirely new statute—a statute which removed a significant amount of the power held by the elected officials in Central Falls and vested that broad, sweeping power in a single individual, the Receiver.[17] We candidly acknowledge that the actions of the Mayor were in conflict with the clear mandates of the Financial Stability Act; but, critically, it was the constitutionality of that very act which the Mayor was challenging.[18] Resolution of that constitutional question was of vital importance to the State of Rhode Island in view of the wide-ranging and indeed draconian powers accorded to the Receiver and in view of the fact that Central Falls was the first municipality in Rhode Island to become subject to the terms of the Financial Stability Act.[19] We would emphasize that, in view of the chronology of events and the gravity and novelty of the

---

[17]    See Unity Telephone Co. v. Design Service Co. of New York, Inc., 179 A.2d 804, 811 (Me. 1962) ("The absence of precedents, or novelty in incident, presents no obstacle to the * * * award of relief in a proper case.") (internal quotation marks omitted).

[18]    It is our view that it would be grave error to take into account the fact that this Court ultimately found the Financial Stability Act to be constitutional, since that is knowledge that the Mayor did not have at the time when the actions at issue were taken. See Moreau, 15 A.3d at 589. Moreover, it is very important to note that this Court quite obviously wrestled with the pro and con arguments as to the constitutionality of the Act, acknowledging that the Act contained a "flaw," but nevertheless finding it, overall, to be constitutional; our opinion was by no means quick and easy but rather, in its length and depth of analysis, reflected the substantial and certainly non-frivolous nature of the constitutional question that was before us. Id. at 578, 589.

[19]    See Karin S. Holst, Moreau v. Flanders, 15 A.3d 365 (R.I. 2011), 17 Roger Williams U. L. Rev. 602, 614 (Spring 2012) (stating that "the issue of the constitutionality of the new receivership statute [(i.e., the Financial Stability Act)] is a question of great importance").

constitutional question, the situation presented to us in these cases is utterly unique. Had the constitutionality of the Financial Stability Act already been established, then any acts by the Mayor which contravened the Act might well have been beyond the scope of his official duties— and, in such a situation, it is possible that he might not have been entitled to indemnification. However, that is decidedly not the case that is presently before us. In our opinion, the Mayor, as the City's chief elected official, had a right, if not a duty, to challenge the Act.

We are further impelled to conclude that the Mayor was acting within the scope of his official duties when we reflect on what would be the effects of coming to the opposite conclusion. When the hearing justice ruled that the Mayor was not acting in his official capacity and therefore was not entitled to indemnification, he thereby left the Mayor financially responsible in his individual capacity for these lawsuits—lawsuits which were undertaken on behalf of the people of Central Falls to determine the constitutionality (or lack thereof) of a new, broad, and far-reaching statutory scheme. If the hearing justice's reasoning were to prevail, the Mayor would be required to pay, out of his own pocket, the attorneys' fees and costs which he incurred in seeking judicial review of several weighty constitutional questions relative to that statutory scheme. While our respect for the trial justice is profound and sincere, we fundamentally disagree with his conclusion that the Mayor was not entitled to indemnification under the highly unusual and unprecedented circumstances at issue in these cases. Accordingly, we are unequivocally disinclined to leave the Mayor personally financially responsible for these lawsuits. To do so would be inconsistent with our view of what is just and equitable in this unique situation.[20]

---

[20]    See Tanner v. Town Council of East Greenwich, 880 A.2d 784, 800 (R.I. 2005) (expressly referencing the "tenets of justice and fairness"); Wilkinson v. Harrington, 104 R.I. 224, 230, 243 A.2d 745, 749 (1968) (stating that "[f]or courts to adopt the approach suggested by

We further note that the Mayor of Central Falls, before entering upon the duties of that office, is required to take an oath; the City of Central Falls Home Rule Charter specifically provides, in pertinent part, as follows:

> "The mayor and members of the city council, before entering upon the duties of their office, shall first be severally sworn or affirmed to the faithful discharge of the same, and to the support of the Constitution and laws of the state, and of the Constitution of the United States, in the form and manner provided for by law." Central Falls Home Rule Charter Art. II, Chap. 1, § 2-105.

Moreover, the Central Falls Home Rule Charter Art. IV, Chap. 1, § 4-100 requires the Mayor to "be at all times vigilant and active in causing the laws of the state and ordinances of the city to be executed and enforced." We are especially struck by the fact that the mandated oath explicitly requires the person being sworn in to support the constitutions of Rhode Island and of the United States. In spite of the fact that the Mayor was reduced by virtue of the Financial Stability Act to an advisory capacity,[21] it is the opinion of this Court that, in this unprecedented and unusual factual scenario, the Mayor was acting in his official capacity with respect to the cases before us because he took an oath to uphold the Constitution and, thus, arguably had a duty to challenge the constitutionality of the Financial Stability Act in his official capacity. See Felkner v. Chariho Regional School Committee, 968 A.2d 865, 874 (R.I. 2009) ("Public policy demands that one who holds a public office discharge his or her duties with undivided loyalty * * *.").

---

[the] respondents would seriously retard the attainment of justice which, after all, is the true purpose of a court's existence"); see also Joseph Hendel, Equity in the American Courts and in the World Court: Does the End Justify the Means?, 6 Ind. Int'l & Comp. L. Rev. 637, 653 (1996) ("In applying equity, the American courts strive to achieve justice. To do justice between the parties is the object of a court of equity.") (internal quotation marks omitted).

[21] In the first Moreau opinion, we pointed out that "§ 45-9-7(c) provides that, even when a receiver has assumed the powers of elected officials, these same elected officials 'shall continue to be elected in accordance with the city or town charter, and shall serve in an advisory capacity to the receiver.'" Moreau, 15 A.3d at 578-79 (quoting § 45-9-7(c)).

Furthermore, this Court has expressly recognized that the Mayor had legal standing to participate in the cases before us in his official capacity. In the first Moreau opinion, we unanimously held, in crystal clear language, that "we have little difficulty in concluding that the mayor and city council, in their individual and official capacities, have standing to challenge the constitutionality of the [Financial Stability Act]." Moreau, 15 A.3d at 574 (emphasis added). Additionally, and significantly, in that first Moreau opinion, with respect to the duration of a receivership, we stated that "judicial relief, by means of an action seeking a declaratory judgment and/or injunctive relief, would be available to municipalities that contend that a receiver has overstayed his statutory authority." Id. at 578. Thus, we have already made it clear that the Mayor had standing in his official capacity to challenge the constitutionality of the Financial Stability Act. It would be contradictory, illogical, and fundamentally unfair for us now to hold that he is not entitled to indemnification because he was not acting within the scope of his official duties.

We believe it prudent to reiterate that our conclusion is based on the significant fact that this was the first time that the Financial Stability Act had been implemented and it had yet to be determined that it passed constitutional muster. It is difficult to conceive of an individual better suited to bring such a challenge before the courts than the Mayor of the first city that was subject to the control of a Receiver under the Financial Stability Act. It is true that the Mayor did not compliantly yield to the dictates of the Act; he opted to avail himself of the judicial process in order to obtain a definitive ruling as to whether or not the provisions of that very Act were constitutional. In our judgment, by so doing he was being faithful to the oath that he took to support the constitutions of Rhode Island and of the United States and to advocate for what he perceived to be the best interests of the people of Central Falls. Cf. State v. Keenan, 68 A.3d

- 23 -

588, 593 n. 4 (R.I. 2013) (stating that "to so rule would be to elevate form over substance, something that we have repeatedly refused to do"); Huffman v. Peterson, 718 N.W.2d 522, 528 (Neb. 2006) ("Equity looks through form to substance. Thus, a court of equity goes to the root of the matter and is not deterred by form."). Accordingly, we hold that, under the factual scenario before us in this case, the actions taken by the Mayor were taken within the scope of his official duties. Consequently, under the mandatory language of § 45-15-16 and the City Ordinance, the Mayor is entitled to indemnification; the law accords no further discretion to the City Council, or the Receiver acting as the City Council, to refuse indemnification.[22] The Mayor should certainly not be required to pay from his personal funds for constitutional litigation which, this Court has stated, he had the standing to bring in his official capacity and which had such a potentially profound impact on the city he had been elected to govern.

For the reasons just discussed and there being no genuine issues of material fact to be decided, it is our opinion that the Mayor is entitled to judgment as a matter of law. See DeMaio, 59 A.3d at 129. Accordingly, we vacate the judgment of the Superior Court and direct that the Mayor should be indemnified pursuant to § 45-15-16 and the City Ordinance.

---

[22] Section 45-15-16 states that a city "may" decline to indemnify a public official if that official's conduct was "willful, wanton, or malicious." Additionally, the Central Falls Code of Ordinances, § 2-109, provides that the City Council "shall" decline to indemnify if the official's actions were "willful, wanton or malicious."

"Whether a municipal officer acted within the law is a judicial question," 62 C.J.S. Municipal Corporations § 465 at 480 (2011), and this Court notes that there is absolutely no evidence that the Mayor's actions in these cases rose to the level of being willful, wanton or malicious, regardless of how many letters the Receiver may have sent him. Accordingly, despite the Appellee's contentions to the contrary, the above-referenced provisions do not apply to the instant cases.

## Attorney Goldberg's Fees

The final issue on appeal is whether Attorney Goldberg, who represented the City Council in these actions, is entitled to be awarded attorneys' fees. The Appellants contend that the City Council "acted in good-faith prosecution and/or defense of an action taken in the public interest and within the scope of [its] official duties" and that Attorney Goldberg is therefore entitled to collect his fees. The Appellants explicitly note that "[n]ever before had any Receiver acted with this scope of authority in any city or town in Rhode Island;" they further assert that the City Council, consequently, had a "duty to challenge the Receiver and the [Financial Stability Act] on behalf of its constituents." Mr. Shine replies by arguing that the Receiver was the only individual who had authority to engage outside counsel and that, given the existence of the receivership, the City Council's decision to engage outside counsel exceeded the scope of its duties.

Central Falls Code of Ordinances, § 2-110(b) provides that the City Council "shall have the authority to approve or deny any and all requests for outside legal counsel on a case-by-case basis." This ordinance bestows upon the City Council the exclusive right to hire outside legal counsel. On August 4, 2010 (after the Receiver was appointed), the City Council passed a resolution hiring independent legal counsel "for guidance and/or litigation concerning the numerous matters that currently affect the City, the Central Falls Community as a whole and the discharge of [the] City Council's obligations * * *."[23] Moreau, 15 A.3d at 572 (internal

---

[23] We are aware of the general rule that, "when a municipal corporation has legal counsel charged with a duty of conducting the legal business of a governmental agency [i.e., a city solicitor], contracts with other attorneys for additional or extra legal services are void." Coventry School Committee v. Richtarik, 122 R.I. 707, 715, 411 A.2d 912, 916 (1980). However, we have noted that an exception to that general rule exists with respect to that rule

quotation marks omitted). On September 20, 2010, the City Council passed a second resolution, which authorized the "engagement of independent legal counsel to file a legal action to challenge the constitutionality of the [Financial Stability Act]." Id.

However, the Financial Stability Act expressly provides that the Receiver may "[a]lter or rescind any action or decision of any municipal or fire district officer, employee, board, authority, or commission within fourteen (14) days after receipt of notice of such action or decision[.]" Sec. 45-9-6(d)(17); see also § 45-9-7. In the instant cases, the Receiver, pursuant to § 45-9-6(d)(17) and § 45-9-7(b)(1), rescinded both of the City Council's resolutions providing for the hiring of independent legal counsel within days of their passage. Moreau, 15 A.3d at 572. Upon rescinding each resolution, he sent a letter to the City Council informing it of his decision. Id. The day after the Receiver rescinded the second resolution, he filed his action in Superior Court seeking declaratory and injunctive relief. Id. at 573. Then, on September 27, 2010, "citing its September 20 resolution," the City Council and the Mayor filed their own cause of action in Superior Court. Id. Both actions are now before us.

The question which we must address is whether or not the attorney eventually hired by the City Council (Attorney Goldberg) is entitled to recover his fees in view of the fact that the resolutions of the City Council providing for his hiring were rescinded by the Receiver. The Court acknowledges that the Financial Stability Act does give the Receiver the power to rescind

---

when there is an "implied authority of a municipal board or officer to hire counsel in the good-faith prosecution or defense of an action taken in the public interest and in conjunction with its or his official duties where the municipality's attorney refuses to act or is incapable of or is disqualified from acting." Id.; see also Retirement Board of the Employees' Retirement System v. City of Providence, 666 A.2d 810, 813 (R.I. 1995) (stating that there was a conflict of interest on the part of the city solicitor because the city and the retirement board were on opposite sides of the case). It is our judgment that the exception applies in the instant cases because there was an obvious conflict between the Receiver, who would also be entitled to a city solicitor's services, and the City Council. As such, the City Council was not barred from retaining independent, outside counsel.

acts of the City Council. However, as we have stated in our extensive discussion concerning indemnifying the Mayor (see Part II.C, supra), the cases now before us are unique and unprecedented and were unique and unprecedented at the nisi prius level. It is clear that the City Council was attempting, in its resolutions, to hire independent legal counsel in order to challenge the constitutionality of the very Act which the Receiver now contends made those resolutions inoperative. Indeed, in determining that Attorney Goldberg was not entitled to his fees, the hearing justice relied heavily on the provisions of the Financial Stability Act which allowed the Receiver to rescind resolutions of the City Council. We are of the opinion that that reliance was misplaced in these unique cases. The hearing justice also relied on our opinion in the first Moreau case—a reliance that was likewise misplaced.

At the time that the City Council passed the resolutions at issue, it did not have the benefit of our lengthy and comprehensive opinion in the first Moreau case, in which, after careful consideration, we ultimately held that the Financial Stability Act is constitutional. Additionally, because the Act was entirely new, the City Council did not have the benefit of any judicial ruling as to the constitutionality which could have guided its actions. Like the Mayor, the members of the City Council take an oath "to the support of the constitution and laws of the state, and of the Constitution of the United States * * *." Central Falls Home Rule Charter Art. II, Chap. 1 § 2-105. It is almost self-evident that the decision of the City Council to hire outside legal counsel was entirely consistent with an effort to comply with that oath. The Financial Stability Act was untested, and the City Council argued that it was unconstitutional. A "municipal corporation which is authorized to contract and to sue or be sued has the implied power to employ counsel to appear in litigation in which it is involved, when in the exercise of its reasonable discretion the interest of the municipality so requires." 56 Am.Jur.2d Municipal

Corporations, Counties, and Other Political Subdivisions § 194 at 320 (2010). Thus, because the City Council acted in a manner which it undoubtedly had reason to believe was consistent with the members' sworn duties and in the best interest of the City of Central Falls (and for the other above-discussed reasons) it is our judgment that it was not beyond the pale of the City Council's official duties for it to challenge the constitutionality of the Financial Stability Act in court.

Our conclusion is once again buttressed by our statement in the first Moreau opinion that the City Council had standing, in its official capacity, to bring a constitutional challenge to the Financial Stability Act. Moreau, 15 A.3d at 574 ("Here, we have little difficulty in concluding that the mayor and city council, in their individual and official capacities, have standing to challenge the constitutionality of the act."). As with the Mayor, it would be contradictory, illogical, and fundamentally unfair for this Court to now hold that the attorneys' fees incurred to bring such a suit (in the City Council's official capacity) must be paid out of the personal funds of the individual City Council members. Rather, we are of the opinion that, under these exceptional circumstances, the resolutions passed by the City Council authorizing the hiring of independent legal counsel, although thereafter rescinded by the Receiver, should be given full force and effect. Hence, it was misplaced for the hearing justice to rely upon the first Moreau opinion, of which the City Council did not have the benefit when it acted, and to rely on the provisions of the Financial Stability Act, which the City Council was attempting to challenge. Accordingly, we conclude that the hearing justice erred in finding that Attorney Goldberg was not entitled to his fees, and we vacate that judgment.[24]

---

[24] Mr. Shine contends that, due to the fact that the Receiver sent letters to the City Council rescinding the resolutions which would have allowed for the hiring of outside counsel, the actions of the City Council in actually hiring outside counsel amounted to willful, wanton, or malicious conduct. Mr. Shine asserts that that conduct provides a basis for the Receiver, acting as the City Council, to decline to pay Attorney Goldberg's fees pursuant to the Central Falls

**Conclusion**

For the reasons set forth in this opinion, we reverse the Superior Court's judgment in all respects. These cases may be remanded to that tribunal for: (1) the entry of summary judgment in accordance with this opinion; (2) a determination of the amount of indemnification that the Mayor is entitled to receive; and, (3) the amount of attorneys' fees that Attorney Goldberg is entitled to receive.

Justice Goldberg did not participate.

**Chief Justice Suttell, concurring in part and dissenting in part.** I am in complete agreement with Section II. B of the majority opinion vacating the judgment in favor of the receiver with respect to the reimbursement of his attorneys' fees. I part company, however, with the majority's reasoning in Sections II. C and D concerning the indemnification of the mayor and the payment of the city council's attorneys' fees.

The majority's mandate directing that the mayor be indemnified for his attorneys' fees and legal costs rests upon G.L. 1956 § 45-15-16 and § 2-108 of the City of Central Falls Code of Ordinances. In similar language, both the statute and ordinance provide that a municipal official shall be indemnified if the official "was acting within the scope of his or her official duties or employment." The majority concludes that, "taking into account the unique and unprecedented set of circumstances presented here," the mayor was indeed acting within the scope of his official

Code of Ordinances, § 2-109. We are unable to perceive any reason to conclude that the <u>justified</u> actions of the City Council in the instant cases could, by any stretch of the imagination, be considered willful, wanton, or malicious.

duties in filing suit to challenge the constitutionality of the Financial Stability Act (Act). My review of the record, however, leads me to a contrary conclusion.

The Financial Stability Act, G.L. 1956 chapter 9 of title 45, is an extraordinary piece of legislation designed "to provide a mechanism for the state to work with cities * * * undergoing financial distress that threatens the fiscal well-being, public safety, and welfare of such cities, * * * with the state providing varying levels of support and control depending on the circumstances." Section 45-9-1. Pursuant to the Act, the director of revenue is authorized to appoint a receiver if lesser measures have been inadequate to restore fiscal stability to the municipality, as set forth in § 45-9-7(a), or if the municipality is facing a fiscal emergency, as set forth in § 45-9-8. The receiver is then empowered to exercise "any function or power of any municipal * * * officer." Section 45-9-7(b)(2). Further, under § 45-9-7(c), "the powers of the receiver shall be superior to and supersede the powers of the elected officials of the city," which officials "shall serve in an advisory capacity to the receiver."

The expansive nature of the Financial Stability Act is further made manifest by § 45-9-12 ("[T]he provisions of this chapter shall supersede any conflicting provisions of the city's * * * charter, local ordinance, rule or regulation."); § 45-9-15 ("Insofar as the provisions of this chapter are inconsistent with the provisions of any charter, other laws, or ordinances, general, special, or local, or of any rule or regulation of the state or any municipality * * *, the provisions of this chapter are controlling."); and § 45-9-16 ("This chapter being necessary for the welfare of the state and its inhabitants shall be liberally construed in order to effectuate its purposes."). Significantly, at all times relevant to these cases, the Act was presumed to be constitutional. See State v. Faria, 947 A.2d 863, 867 (R.I. 2008) ("legislative enactments of the General Assembly

- 30 -

are presumed to be valid and constitutional") (quoting <u>Newport Court Club Associates v. Town Council of Middletown</u>, 800 A.2d 405, 409 (R.I. 2002)).

In accordance with the Act, the nonjudicial receiver for the City of Central Falls was appointed on July 16, 2010 and thereby assumed the duties and functions of the office of the mayor and relegated the mayor to serve in an advisory capacity only. In light of the statutory framework and the "broad and sweeping" powers devolved by the General Assembly upon the receiver, <u>Moreau v. Flanders</u>, 15 A.3d 565, 577 (R.I. 2011), I do not consider the actions of the mayor in challenging the constitutionality of the Financial Stability Act to be within the scope of his official duties or employment. His authority at that time was purely advisory and did not enable him to incur legal costs at the expense of his financially distressed city.

Moreover, § 2-109 of the City of Central Falls Code of Ordinances provides that "[t]he city shall decline to indemnify any * * * official * * * for any * * * act, * * * if the same resulted from willful, wanton or malicious conduct on the part of such * * * official * * *. The city council shall decide, on a case-by-case basis, whether indemnification should be allowed or declined." Clearly the receiver, in whom the authority of the city council had statutorily vested, did not allow indemnification to the mayor; on the contrary, the receiver specifically rescinded the city council's resolution to engage outside counsel for the mayor. In my opinion, the mayor's actions were in direct defiance of the receiver's superior and superseding powers and, thus, far exceeded the narrow scope of his official, <u>i.e.</u>, advisory, duties.

The majority awards the mayor indemnification of his attorneys' fees, based upon § 45-15-16, without regard to the text of the Financial Stability Act. I do not believe, however, that the mayor gets a free pass from the strictures of the Act simply because its constitutionality had yet to be tested. The mayor may well have been raising a courageous challenge to the

constitutionality of the Act, but neither state statute nor city ordinance provided him with a means for indemnification.[25]  As the hearing justice succinctly put it:

> "[T]he Receiver, exercising the powers of the city council in accordance with §§ 45-9-7(b) and (c), was vested with the authority to approve or deny [the mayor]'s requests for outside legal counsel.  In view of [the mayor]'s engagement of outside counsel—in contravention of the Receiver's September 22 letters—the City and Receiver are relieved of responsibility for indemnifying him against those expenses, and [the mayor] must now accept responsibility for the consequences of his choices."

The issue with respect to the payment of Attorney Goldberg's attorneys' fees is even more compelling.  The majority reverses the hearing justice's decision, again based upon the exceptional and unique circumstances of this case, primarily because the Financial Stability Act was untested and the city council erroneously believed it to be unconstitutional, noting that the council "did not have the benefit of our lengthy and comprehensive opinion in the first <u>Moreau</u> case."  The majority also faults the hearing justice for relying "heavily on the provisions of the Financial Stability Act which allowed the Receiver to rescind resolutions of the City Council."  This reasoning entirely ignores the fact that the Act was and is, then and now, valid and constitutional.

Pursuant to the Act, the authority of the city council was reduced to an advisory capacity, and the receiver was vested with superior, superseding powers. Section 45-9-7(c).  In exercising his legislatively granted authority, the receiver rescinded two resolutions of the city council: one that authorized "the engagement of legal representation for the Council concerning the numerous

---

[25] The majority also leans heavily on the previous statement of this Court that "the mayor and city council, in their individual and official capacities, have standing to challenge the constitutionality of the act." <u>Moreau v. Flanders</u>, 15 A.3d 565, 574 (R.I. 2011).  However, it does not necessarily follow from the fact that the mayor had standing to challenge the constitutionality of the Act that he also had the authority to require the financially ailing city of Central Falls to pick up the tab.

matters that are currently affecting the City and the Central Falls Community"; and another that authorized the engagement of independent counsel to file a legal action to challenge the constitutionality of the Financial Stability Act. See § 45-9-6(d)(17); § 45-9-7(b)(1). Despite these express rescissions, the city council chose to engage the services of outside legal counsel. I do not agree with the majority's contention that the city council's resolutions, which were lawfully rescinded by the receiver, were somehow valid because this Court had yet to rule on the constitutionality of the Act.

In my judgment, the overriding exceptional and unique circumstance in this case was the dire financial condition afflicting Central Falls, which necessitated the appointment of a receiver. The General Assembly carefully crafted the Financial Stability Act to provide relief to distressed cities and to provide support to allow such municipalities a means of regaining their fiscal footing. Here, the actions of both the mayor and the city council were in contravention of the Act. Accordingly, I see no basis in law to indemnify the mayor or award fees to the city council's attorney, and I respectfully dissent from Sections II. C and D of the majority opinion.



**TITLE OF CASE:**      Allan M. Shine et al. v. Charles Moreau et al.

**CASE NO:**      No. 2013-247-Appeal.
(PB 10-5615)
No. 2013-248-Appeal.
(PC 10-5672)
No. 2013-249-Appeal.
(PB 10-7394)

**COURT:**      Supreme Court

**DATE OPINION FILED:**   June 18, 2015

**JUSTICES:**      Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Associate Justice William P. Robinson III

**SOURCE OF APPEAL:**   Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Michael A. Silverstein

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Theodore Orson, Esq.

For Defendant:  John O. Mancini, Esq.